THE STATE OF KANSAS v. DENNIS MORAN.

1. ASSAULT *with Intent to Kill—Erroneous Instruction.* Where a defendant is charged with an assault with a deadly weapon with intent to kill, under the provisions of ¶ 2159, Gen. Stat. of 1889, and the evidence of the prosecution tends to establish that offense, and the evidence of the defendant tends to show that he shot off the deadly weapon (a pistol) into the ground with no intention to harm, hurt or kill any one, and that no one was shot, struck or hurt thereby, it is error for the district court to instruct the jury that they might convict the defendant of an assault with intent to commit manslaughter.

2. DEFENDANT—*Personal Presence.* It is a violation of § 207 of the criminal code to try any person accused of felony, unless he is personally present throughout the trial. (*The State v. Myrick,* 38 Kas. 238.)

*Appeal from Bourbon District Court.*

AT the December term, 1890, *Moran* was convicted of an assault with intent to commit manslaughter, and sentenced to confinement in the penitentiary for 18 months. He appeals. The facts appear in the opinion.

*A. M. Keene, D. F. Campbell,* and *J. B. Larimer,* for appellant.

*Geo. M. Clark,* for The State.

The opinion of the court was delivered by

HORTON, C. J.: Dennis Moran was informed against by the county attorney of Bourbon county for an assault with intent to kill Alexander Mason, on the 16th day of November, 1888. He was tried, and convicted "of an assault with intent to commit manslaughter." He was sentenced to confinement at hard labor in the penitentiary of the state for the term of 18 months. From the sentence and judgment rendered against him he appeals to this court. The evidence of Alexander Mason, the prosecuting witness, was as follows:

"I live in Bourbon county in this state, two miles south and one-half mile east of Fulton. I am acquainted with the defendant, Dennis Moran. On or about the 16th day of November, two years ago, in the evening between 5 and 6 o'clock, in Bourbon county, in this state, I was doing up my chores, and somebody called me, and I answered. I was in the barn putting in corn for the team, and I answered and asked who it was. I stepped out and saw it was Den. Moran; I walked out toward him and said, 'Den., go home; I don't want to talk to you.' He said, 'You God damn son of a bitch, I am going to kill you,' and shot. When I saw him draw his revolver I hallooed to Mrs. Graham; she stepped to the door and saw him shoot. I hallooed to her to get me my gun. He snapped his revolver twice, and then put spurs to his horse. I was about 15 or 16 steps from Moran when he shot at me; I heard the bullet whiz by me about a foot or two from my face; I had been shot at before, and had heard a bullet whiz by me once before. The bullet struck the ground after it passed me about

12 or 15 feet; I looked for the bullet the next day and dug it out of the ground; I have that bullet now in my pocket; here is the bullet; I have kept it ever since in my possession. Moran, when he rode up, after he stopped, drew his revolver, held it in his right hand and shot at me; and after he snapped his revolver twice and it did not go off, went east up the road as far as I could see him. I afterward went on and did up the night's work, and then went over home, and they informed me that Dennis Moran had had trouble in town that afternoon with my brother Robert. Then I came to town and got out the papers. I did not have any weapons on me at the time Dennis Moran shot at me; had been plowing on the farm all day, and had just come in from work and was putting up the team and feeding them; I looked at the clock when I went to the house, to see what time it was; it was just about sunset the time the shooting took place."

The defendant, Dennis Moran, testified in his own behalf as follows:

"On November 16, 1888, I was in Fulton; I had some trouble with Robert Mason; I had left town and was going out home that night along just before dark, and as I was going by Alec Mason's, Mason came running out with a scoop shovel in his hand, and said to me, 'Come in, you son of a bitch; you licked my brother, but you can't lick me.' This was the first thing that was said between Alec Mason and myself. Then he called for his revolver, and started for the house to get it, and after he started for the house, I pulled my revolver and shot twice in the ground, near the fence; I did not shoot at Alec Mason, I merely shot in the ground; I did not see anybody there; I did not see Mrs. Graham; I had known and heard of a great many threats made by Alec Mason. Several parties had told me he intended to kill me as soon as he got a chance, and when he made the threat that he did and called for his revolver, on November 16, I shot twice as I said, into the ground, to scare him, in order that I might have the opportunity to run my horse and get away from him before he could get his revolver and shoot me; that is the reason that I shot twice as I did; I expected him to kill me at that time if he could get his revolver. I have always shunned him if I could; I have always been afraid that he would shoot me, or that I would have trouble with him when I met him. Mrs. Foster had told me of his threats, and several others; I

never made any threats against him in my life; I had had enough trouble with the Masons; they had sworn a bastard child on me, and I afterward brought suit for malicious prosecution against them, and recovered a $700 judgment off of them, and I was tired of having anything more to do with them."

The court charged the jury, among other things, as follows:

"In order that you may convict the defendant of assault with intent to commit manslaughter, it is incumbent on the prosecution to prove to your satisfaction, beyond a reasonable doubt, that the defendant, at the county of Bourbon, state of Kansas, on or about the 16th day of November, 1888, did shoot at the said Alexander Mason with a pistol loaded with gunpowder and ball, with the intent to kill said Mason. In order to convict the defendant of the crime of assault with intent to commit manslaughter, it is not necessary that the defendant should have had a settled and premeditated design formed before the shooting, if he did shoot to kill said Mason, but he must have shot, with the intent in his mind at the time of the shooting, to kill said Mason. Within the charge are included the minor offenses of assault with intent to commit manslaughter and simple assault."

Upon the facts testified to by the prosecuting witness, the trial court committed error in charging the jury concerning manslaughter. If the assault was made as testified to by the prosecuting witness, the defendant was guilty of assault with intent to kill and murder. If Alexander Mason had been shot and killed by Dennis Moran at the time of the alleged shooting, Moran would have been guilty of murder in the first degree, or murder in the second degree. Within the provisions of the statute, he would not have been guilty of manslaughter in any degree. (Gen. Stat. of 1889, ¶¶ 2133–2151, 2159.) Where an assault is made by a person with intent to take the life of another, and the killing is not lawful or excusable, if death should ensue, the party would be guilty of murder. Excepting under certain circumstances not embraced within the facts testified to in this case, a defendant could not be convicted of an assault with intent to commit manslaughter, where the facts show that he intended to commit murder.

21 — 46 KAS.

(*The People v. Lilley*, 43 Mich. 521; *The State v. White*, 41 Iowa, 316; 5 Lawson, Def. Crime, p. 783.) The use of the word "manslaughter" in the charge of the district court may have misled the jury, and therefore the charge was prejudicial. (*The State v. Mize*, 36 Kas. 187.)

Further, it appears from the record that the defendant, Moran, was absent, with the consent of the court, while one of the witnesses upon the part of the state was testifying. This is fatal error. (*The State v. Myrick*, 38 Kas. 238.) In that case it was said:

"Section 207 of the criminal code prohibits the trial of any person accused of felony, unless he is personally present throughout the trial; and it is therefore error for the court, in a prosecution for felony, to recall the jury and give further instructions while the defendant is absent and under confinement in jail. In such case, the presence and consent of defendant's counsel did not waive or cure the illegality."

The other questions presented need not be discussed. The judgment of the district court will be reversed, and the case remanded for a new trial.

JOHNSTON, J. concurring.

VALENTINE, J.: I concur in the reversal of the judgment of the district court, but I cannot say that I concur in all that is decided, or all that is said by the Chief Justice.