State v. Hunt, 26 N. M. 160.

(No. 2341.   March 19, 1920.)

(Rehearing Denied June 8, 1920.)

## STATE v. HUNT et al.

### SYLLABUS BY THE COURT.

1.   It is within the discretion of the trial judge to admit in rebuttal, or at the time for rebuttal, facts and circumstances which are not strictly in rebuttal, and which should be, or might have been offered in chief.                    P. 161

2.   An additional instruction to the jury upon their reporting to the court their inability to agree, calling the attention of the jury to the expense to the county and the defendants of the trial, the length of time it had taken to try the case, and which told them it was their duty to agree if an agreement was possible without any juror violating his conscientious conviction, was not erroneous.                    P. 161

3.   It is improper for the trial judge to have any communication with the members of the jury about the case on trial which is not in open court and in the presence of the defendant.                    P. 164

Appeal from District Court, Grant County; R. R. Ryan, Judge.

Samuel L. Hunt and Joseph S. Hunt were convicted of murder in the second degree, and they appeal. Reversed, and remanded for a new trial.

EDWARD R. WRIGHT, of Santa Fe, WILSON & WALTON, of Silver City, JAMES S. CASEY, of Tyrone, and CLIFTON MATHEWS, of Bizbee, Ariz., for appellants.

O. O. ASKREN, Atty. Gen., and N. D. MEYER, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT.

ROBERTS, J.   This is an appeal from a conviction of murder in the second degree. Three grounds of error are relied upon for a reversal. The first is in the admission of certain evidence in rebuttal. The deceased, Chester Bartell, was killed by the appellants along a trail through the forests of Grant county. The killing

was admitted, and self-defense was interposed as justification. In rebuttal two witnesses were permitted to testify to the finding of a bullet at the scene of the homicide more than six months after the date thereof, and the bullet was put in evidence. The objection made to the admission of this evidence upon the trial was that it was not proper rebuttal. This objection is urged here, and also it is further contended that the finding of the bullet more than six months after the homicide was so remote in point of time as to make evidence thereof inadmissible. This second ground is here urged for the first time, and, under the well-established rule, is not available to the appellants.

[1] As to the question as to whether there was error in the admission of this evidence in rebuttal when it should have been put in in chief, it is well settled that it is within the discretion of the trial judge to admit in rebuttal, or at the time for rebuttal, facts and circumstances which are not strictly in rebuttal and which should be or might have been offered in chief. 16 C. J. 868; Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343; State v. Riddle, 23 N. M. 600, 170 Pac. 62.

[2] After the jury had deliberated for approximately 18 hours without arriving at a verdict, and had then been called into court and interrogated by the judge, and in response to his inquiries had informed him that they stood then as they had stood since their first ballot, the judge gave to the jury the following instruction:

"Gentlemen of the jury, upon your report that you are unable to agree in the cause which has been submitted to you, I feel it my duty to direct you to consider the case further in an effort to reach an agreement. I instruct you that this case has occasioned a great deal of trouble and involved great cost alike to Grant county and the defendants. It has taken up over a week of the time of this court. It is important, therefore, both to the state and to the defendants, that you arrive at some verdict. You should agree upon a verdict. No juror, from mere pride of opinion hastily formed or expressed, should refuse to agree, nor should any juror surrender any conscientious conviction founded on the evidence and the in-

structions allowed and given by the court. It is the duty of each juror to reason with his fellows concerning facts in the case and application of them to the instructions of the court with an honest and fearless desire to arrive at the truth and with a view to reaching a verdict. It should be the object of all of the members of the jury to arrive at a verdict and to that end to deliberate together with calmness, reason, and fairness. It is your duty to agree upon a verdict, if such an agreement be possible, without any juror violating his conscientious conviction. I instruct you that you should so agree without any juror violating his conscientious convictions, but let such juror reason honestly with himself whether his opinion expressed in the jury room is a conscientious conviction, based upon the facts in the case and the law as given by the court, fairly, honestly, and fearlessly 'considered; and you should understand very clearly that such a conviction is not determined in any wise by regard for any personal consideration involved, whether of friendship or business; and no juror should consider what may be the probable result upon any personal interest of his of the verdict that might be agreed upon. If he is guided by such personal interest, he is not faithful to the oath he has solemnly taken in this court. To aid you in further consideration of the case, I instruct you that, although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions not a mere acquiescence in the conclusion of his fellows, yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided, that you are selected in the same manner and from the same source from which any future jury must be, and ·there is no reason to suppose that the case will ever be submitted to 12 men more intelligent, more impartial, or more competent to decide it, or that more and clearer evidence will be produced on the one side or on the other. And, with this in view, it is your duty to decide the case if you can conscientiously do so. In conferring together, you ought to pay a proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments, and, on the other hand, if the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression on the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, and with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for the defendants, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors."

Before submitting this instruction to the jury, a copy
of it was handed to counsel for appellants, and they
stated the following objection to the giving of the in-
struction:

"Defendants at this time object to the giving of the addi-
tional instruction to the jury for the reason that such instruc-
tion does not state the law, in that it directs the jury to con-
sider matters other than the evidence adduced upon the trial
of this cause in arriving at their verdict, in that it is calculated
and intended to give the impression that each juror should re-
gard the opinion of the greater number of jurors as entitled
to more weight and consideration than the opinion of the
smaller number of jurors; that those who are in the minority
should renounce their convictions and give way to the opinion
of those who are in the majority, merely because of such pre-
ponderance of numbers, in that it seeks a verdict which is not
in truth and in fact the individual verdict of each and every
juror, in that under the existing circumstances it amounts to
a coercion of the jury, in that it is highly prejudicial to these
defendants."

If the language in the instruction by which the trial
court denounced as unfaithful to his oath any juror who
in forming or adhering to an opinion was influenced by
personal considerations of friendship or business was
calculated to coerce or intimidate the jurors, of course,
the instruction would be erroneous. But it will be ob-
served that this ground of objection was not urged in
the court below, and, according to the authorities, this
is the only possible error in the instruction. In the case
of Territory v. Donahue, 16 N. M. 17, 113 Pac. 601, an
instruction given under similar circumstances, and which
went almost as far as this instruction, was approved by
the territorial Supreme Court. The instruction here
went further in this; it called the attention of the jury
to the expense to the county and the defendants of the
trial, the length of time it had taken to try the case, and
told them repeatedly that it was their duty to agree if
an agreement was possible, without any juror violating
his conscientious conviction, and further as above
pointed out. The general rule is that the trial court may
detail to the jury the ills attendant on a disagreement,
the expense, the length of time it has taken to try the
case, and that the case will have to be decided by some

jury on the same pleadings and in all probability on the same testimony. Case notes will be found fully discussing the question and citing all the cases as follows: Alabama Great Southern Railroad Co. v. Daffron, Ann. Cas. 1912D, p. 438; State v. Place, 11 Ann. Cas. 1129. See also Shea v. U. S., 260 Fed. 807.

It is very doubtful whether the court was warranted under the law in the use of language which called attention to a possible personal interest of some of the jurors in the case, or a fear of the result upon their personal interests. This may have acted as a form of coercion upon the minority of the jurors. They may have reasoned that the court was of the opinion that their refusal to agree to a verdict was prompted by personal interest or that the fear that an agreement on their part to a verdict might affect their business interests. It was unfortunate language, to say the least. But, as stated, this ground of objection was not urged to the instruction of the court below and is not available to the appellants here.

[3] It is lastly urged that it was error for the judge to have a conversation with a member of the jury about the case during a recess of the court and in the absence and without the knowledge of appellants or their counsel, but in the presence and with the knowledge of the district attorney, and in that conversation to advise the juror to rise in the jury box in open court, after all evidence and argument had been concluded, and request that the right shoe of the deceased be cut open and exhibited to the jury, and for the judge afterwards to grant such request when actually made in open court, never having disclosed to appellants or their counsel that such conversation had been had or such advice given.

The facts upon which this alleged error is predicated are as follows: Upon the trial of the case a shoe taken from the right foot of the deceased was put in evidence. A bullet had penetrated the sole of this shoe near the toe. It was the theory of the state that the bullet had been

fired by one of the appellants while the deceased was
lying on the ground and at the time of the fatal en-
counter. It was the contention of the appellants that
the bullet had been fired into the sole of the shoe some
hours after the death of deceased by one of his friends
for the purpose of manufacturing evidence against the
appellants. Evidence had gone in by experts to the ef-
fect that a bullet fired into a dead body would not cause
a flow of blood. The shoe was not cut open, and it was
impossible for any one to see whether there was or was
not blood in the toe of the shoe.

The facts attending the conversation between the court
and juror were certified by the trial court as follows:

"After the argument to the jury of Clifton Mathews, who
made the closing argument for the defendants, the court an-
nounced a recess; thereupon, as the jury were leaving the jury
box and before the court had retired from the bench, Juror
M. N. Ross approached the judge of the court in the court-
room and stated that the jury desired to have the shoe in
question opened so that the interior thereof might be dis-
covered and so that it might be disclosed whether or not the
toe of the said shoe contained blood; that at the time said re-
quest was made the jury were in the act of leaving the jury
box, the judge of the court had not left the bench, and there
were several bystanders within hearing distance of the said
juror, Ross, at the time he made said request, and the judge
of the court thereupon stated to said juror that, if the jury
desired that this be done, the proper course to follow was for
one of the jury to rise before the court in the jury box in open
court and make such request; that at the time said request
was so made by said juror, M. N. Ross, and at the time the
judge of the court made his statement to the said juror,
M. N. Ross, in response to said request, the defendants were
not, nor was either of them, and counsel for defendants were
not, nor was either of them, within hearing so far as the
court is aware of said juror, M. N. Ross, or of the said court,
or of the said colloquy which occurred between the said juror,
M. N. Ross, and the court. Counsel for the state thereupon,
or immediately thereafter, knew and became aware that such
request had been so made, and that such response had been
so made by the court, as above recited, but, so far as the court
is aware, neither the defendants, nor either of them, nor their
counsel, nor either of said counsel, heard said request, or the
response of the court thereto, or knew of the same. There-
after, and after all argument of counsel to the jury had ended
and closed, and before the court had instructed the jury, said
juror, M. N. Ross, in open court, from the jury box, requested
the court to allow said shoe, State's Exhibit D, to be so cut

open. Thereupon the state, through its district attorney, as-
sented to the same being done, and thereafter the defendants,
through their counsel, assented to the same, and thereupon,
after such assent in open court, the said shoe was by the
sheriff, under the direction of the court, cut open, so that its
interior, which was not previously disclosed to view, could be
seen, and when said shoe was so cut open, and the interior
thereof so exposed to view, there was visible in that part of
said interior so exposed to view, at and around and near the
bullet hole passing through the sole of said shoe, a consid-
erable quantity of dry blood, or of a substance having the
appearance of dry blood. Said shoe, State's Exhibit D, was
thereupon passed into the jury box, and in such condition
was viewed and examined by the members of the jury, and
thereupon, and immediately thereafter, the court proceeded
to instruct the jury and to give them the case for considera-
tion of their verdict."

It is elementary that in a felony case the accused
must be personally present at every stage of the trial.
If any material step in the trial is taken in his absence
and a conviction results, it must be set aside. This rule
has been applied in many cases. It has been held, for
example, that it was fatal error to proceed with the im-
paneling of a jury in the absence of the accused. War-
field v. State, 96 Miss. 170, 50 South. 561; State v. Dry,
152 N. C. 813, 67 S. E. 1000; State v. Thomas, 128 La.
813, 55 South. 415.

It is likewise reversible error to permit any evidence
to be heard in the absence of the accused. State v.
Moran, 46 Kan. 318, 26 Pac. 754; Garman v. State, 66
Miss. 196, 5 South. 385; Richards v. State, 91 Tenn. 723,
20 S. W. 533, 30 Am. St. Rep. 907; Booker v. State, 81
Miss. 391, 33 South. 221, 95 Am. St. Rep. 474; Burton
v. State, 46 Tex. Cr. R. 493, 81 S. W. 742; State v. Man-
nion, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am.
St. Rep. 753; State v. Sheppard, 49 W. Va. 583, 39 S. E.
676; Washington v. State, 52 Tex. Cr. R. 323, 106 S. W.
361; Hill v. State, 54 Tex. Cr. R. 646, 114 S. W. 117;
Emery v. State, 57 Tex. Cr. R. 423, 123 S. W. 133, 136
Am. St. Rep. 988; Sadler v. State, 98 Miss. 401, 53 South.
783; Lee v. State, 101 Miss. 387, 58 South 7; Doss v.
State, 104 Miss. 598, 61 South. 690; Watkins v. State,
110 Miss. 438, 70 South. 457.

So also must a conviction be set aside where the accused was absent during the argument to the jury. Tiller v. State, 96 Ga. 430, 23 S. E. 825; Humphrey v. State, 3 Okl. Cr. 504, 106 Pac. 978, 139 Am. St. Rep. 972; Morey v. State, 72 Fla. 45, 72 South. 490.

Absence of the accused while the judge is instructing the jury is equally fatal. Roberts v. State, 111 Ind. 340, 12 N. E. 500; State v. Myrick, 38 Kan. 238, 16 Pac. 330; Territory v. Lopez, 3 N. M. 104, 2 Pac. 364; Kinnemer v. State, 66 Ark. 206, 49 S. W. 815; Stroope v. State, 72 Ark. 379, 80 S. W. 749; Bailey v. Commonwealth, 24 Ky. Law Rep. 1419, 71 S. W. 632; Havenor v. State, 125 Wis. 444, 104 N. W. 116, 4 Ann. Cas. 1052; Gardner v. State, 55 Tex. Cr. R. 394, 117 S. W. 140; State v. Beaudin, 76 Wash. 306, 136 Pac. 137 ;State v. Shutzler, 82 Wash. 365; 144 Pac. 284; Pearson v. State, 119 Ark. 152, 178 S. W. 914.

In like manner a verdict of guilty rendered in the absence of the accused must be set aside. Harris v. State, 153 Ala. 19, 49 South. 458; Derden v. State, 56 Tex. Cr. R. 396, 120 S. W. 485, 133 Am. St. Rep. 986; Lyons v. State, 7 Ga. App. 50, 66 S. E. 149; Humphrey v. State, 3 Okl. Cr. 504, 106 Pac. 978, 139 Am. St. Rep. 972; Smith v. People, 8 Colo. 457, 8 Pac. 920; Summeralls v. State, 37 Fla. 162, 20 South. 242, 53 Am. St. Rep. 247; Wells v. State, 147 Ala. 140, 41 South. 630; Commonwealth v. Gabor, 209 Pa. 201, 58 Atl. 278; Percer v. State, 118 Tenn. 765, 103 S. W. 780.

As a part of the same doctrine, it is uniformly held to be reversible error for the judge to have any communication with the jury, except in open court and in the presence of the accused and his counsel. A case in point is that of Territory v. Lopez, 3 N. M. 156, 2 Pac. 364. The defendants in that case were being tried for cattle stealing. After the jury had been charged by the court, and had retired to deliberate, they were brought into court, in the absence of the accused and their counsel, and one or more of the number made an inquiry of

the judge as to "where those men," meaning the de-
fendants, "were driving those cattle," and the judge,
in the absence of the accused and their counsel, answered
the inquiry by telling the jury that they must determine
that fact according to the evidence and just as they
would determine any fact in the own private affairs.
There was a verdict of guilty, and on appeal the Supreme
Court said:

"The defendants were being tried for grand larceny, which,
under our law, is a felony. The doctrine seems to be well
settled, that after the jury have been instructed and have re-
tired to consider of their verdict, in all trials for felony it
would be irregular and improper for the court to receive the
jury, or to have any communication with them touching the
case submitted to them, in the absence of the defendant. In
all such cases the presumption of law is that the irregularity
per se constitutes error. On this subject Mr. Bishop says:
'It is a principle pervading the entire law of procedure in
criminal causes that, after indictment found, nothing shall be
done in the cause in the absence of the prisoner.' 1 Bish.
Crim. Proc. § 682. To this principle, as a rule of law, there
are no exceptions other than in the lower class of misde-
meanors, where a fine only, and no corporal punishment, may
be imposed, and in a few instances of orders within the discre-
tion of the presiding judge, such as an order on a motion for a
continuance. And even such motion, if made on behalf of
the prosecution, cannot be entertained, except on notice to
the prisoner or his counsel. Id. §§ 684, 685. In regard to
felonies Mr. Bishop further says: 'In felonies it is not in the
province of the prisoner, either by himself or by his counsel,
to waive the right to be personally present during the trial.'
Id. § 686. This is strong language, but it is unquestionably
the law. * * * After the jury have been charged by the
court, and they have retired to deliberate, it is always proper
for them to ask the bailiff in charge to conduct them before
the court for further instructions. But in all such cases the
proper practice would be to send for the prisoner and his
counsel, and as soon as they come into court to have the
names of the jurors called, and, if all are found to be present,
the court will then receive any communication they have to
make, and instruct them accordingly. Mr. Bishop more elab-
orately puts it thus: 'After the jury have retired to deliberate
on their verdict, there may be further communication be-
tween them and the court at the desire of either. If at the
court's, an officer is sent for them, and it takes place in open
court; the judge has no right to visit them for the purpose in
their room, or otherwise communicate with them in private.
If at the jury's, they are conducted for the purpose into open
court. The counsel and the parties should be notified, and
their presence is a right or necessity the same as during the
prior parts of the trial. The instructions desired on the one

side or the other and required by the circumstances will then be given.' 1 Bish. Crim. Proc. (3d Ed.) § 1000."

It is to be conceded that there was no impropriety in the juror asking that the shoe be cut open, or on the part of court in granting the request. The error consisted in the communication between the judge and the juror about the proper way for the jury to obtain the right to inspect the inside of the shoe in the absence of the defendant and while the court was not in session.

In an early Massachusetts case (Sargent v. Roberts, 1 Pick. 337, 11 Am. Dec. 185) the foreman of the jury sent a note to the court stating that it was impossible for the jury to agree. The judge in reply addressed a written communication to the jury urging them to agree. The note from the foreman of the jury and the written communication by the judge were filed in the case so that what was said did not depend upon the memory of the judge or juror. The court said:

"The object of the note of the foreman was probably to obtain leave for the jury to separate, and the answer of the judge was calculated to enable them to revise the case in a systematic manner, in the hope that such a revision would produce a union of opinion on one side or the other of the cause. It probably had that effect. As it is impossible, we think, to complain of the substance of the communication, the only question is whether any communication at all is proper; and, if it was not, the party against whom the verdict was, is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and where practicable, in presence of the counsel in the cause. * * * It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it; the only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case, except in open court in presence of the parties and their counsel."

Many cases to the same effect will be found cited in notes to the cases of State v. Murphy 17 L. R. A. (N. S.) 609, and Lewis v. Lewis, L. R. A. 1915D, 719. These cases are practically unanimous upon the proposition

170     SUPREME COURT OF NEW MEXICO

State ex rel. Sandoval v. County Com., 26 N. M. 170.

that any communication between the judge and the jury respecting the case, had after the cause has been submitted and not in open court and in the presence of the parties, is reversible error. And this upon the ground that any communication under such circumstances is improper, and that the party in order to secure a setting aside of the verdict was not required to show prejudice, but only the fact that there was such unauthorized communication. There is no more reason for saying that it is improper for the trial judge to communicate with the jury after it had retired to consider of its verdict not in open court and in the presence of the parties than for him to have such communication with the jury about the case while on trial and prior to such retirement. Whatever fact the juror desires to communicate to the trial court relative to the case then on trial should be made from the jury box in open court and in the presence of the parties and likewise the answer of the judge thereto. For this reason the cause must be reversed, and remanded to the district court for a new trial; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.