[No. 2901. Dec. 22, 1924]

STATE v. HUNT et al.

### SYLLABUS BY THE COURT

It is error, requiring reversal, to submit to the jury a degree of unlawful homicide not within the proofs, and over the objection of the defendant.

Appeal from District Court, Hidalgo County; Ed Mechem, Judge.

Samuel L. Hunt and Joseph S. Hunt were convicted of voluntary manslaughter, and they appeal. Reversed and remanded, with directions to discharge defendants.

Percy Wilson and W. B. Walton, both of Silver City, and Clifton Mathews, of Globe, for appellants.

Milton J. Helmick, Atty. Gen., and John W. Armstrong, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

PARKER, C. J. This case was before this court once before, and was reversed for considerations not pertinent to this inquiry. See State v. Hunt, 26 N. M. 160, 189 P. 1111. Over the objection of appellants, the court in this trial submitted to the jury the question of guilt of appellants of voluntary manslaughter. The trial resulted in a conviction of voluntary manslaughter, and this is the sole question presented

for review.   The facts in the case are, briefly stated:
That on the morning of September 13, 1917, the de-
ceased left his homestead on horseback to go to the
the Hunt place, some four or five miles distant, where
appellants and their brother, Jack P. Hunt, lived with
their parents and sister·   When the deceased left his
home, he had with him a 30-30 Winchester rifle,
which he carried in a scabbard on the right-hand side
of his saddle.   He was riding along a trail which led
through rocks and brushes to the point where his
body was afterwards found.   His body showed numer-
ous bullet wounds, which were the cause of his death.
On the morning of the said September 13, 1917, the
appellants, together with their brother, Jack P. Hunt,
started out to drive some cattle from the Hunt place
to what is called the Blair place, for the purpose of
taking the cattle to a watering place situated on the
Blair place.   The Hunts were all armed with rifles
and pistols.   In so driving the cattle, they drove them
along the same trail upon which the deceased was
traveling toward them.   At the point where they met
the deceased, the trail divided, and one branch went
around either side of a clump of bushes, through or
beyond which the appellants could not see a man
on horseback.   Just prior to reaching the clump of
bushes, some of the cattle which they were driving left
the trail, and the brother, Jack P. Hunt, left the trail
to go after and return the cattle, and he was not
present at the killing.   One of the appellants passed to
the right and the other to the left of the clump of
bushes, and upon arriving at the farther side of the
bushes they saw the deceased sitting on his horse, his
horse standing still, the deceased holding the bridle
reins in his left hand and attempting with his right
hand to take his Winchester out of the scabbard in
which he was carring the same.   The gun hung in the
scabbard, and the deceased was never able to get the
gun more than halfway out of the scabbard.   Not
a word was spoken by any of the three parties. Upon
seeing the deceased drawing his Winchester from the
scabbard, the two appellants opened fire upon him

with pistols, discharging several shots, and keeping on firing until the deceased began to fall from his horse to the ground, where he instantly died. Jack P. Hunt, upon hearing the shots, came to the spot, and the three Hunts left together; Jack Hunt going at once to the justice of the peace and announcing the killing, and the two appellants going to or near the Hunt place, where they surrendered themselves to the justice of the peace. The Hunts account for the fact that they were armed by testifying that one of them had been shot at on three different occasions by some unknown person about a week prior to the homicide, and that they believed that the deceased was the person who fired the shot. Prior to that time, they had gone unarmed. Witnesses testified in behalf of appellants that the deceased tried to employ them to assist him in getting the Hunts out of the country, and said that there was $5,000 in it if it could be done, and that he (the deceased) was going to get them out if he had to kill them himself. Appellants were not informed of this threat until after the homicide. A forest ranger also testified that deceased tried to get him to give deceased a permit covering the same land which the Hunts had already procured from the Forest Service, which he declined to do, and that the deceased told him that he wanted to run the Hunts off of the Blair place, which was the place for which he desired the forest ranger to give him a permit. The evidence seems to be uncontradicted in any material particular. The Attorney General seeks to sustain the instruction of the court by arguing that the evidence justifies the inference that there was, or might have been, heat of passion in the minds of the appellants. He suggests that shooting at one of the appellants by deceased about a week previous to the homicide was adequate cause for heat of passion in the form of fear and terror. He also suggests the presence of the deceased on the trail, causing the cattle to stampede, the watering of deceased's horse at appellants' watering place without leave, and the mere fact of the trespass of deceased by being on the

trail and on the land covered by the forest permit of the appellants, as possible adequate cause for heat of passion. It is perfectly apparent that none of these facts are adequate cause for heat of passion, and if appellants killed deceased for any one or all of these reasons, they murdered him. The former shooting, if they had reason to believe and did believe that deceased had done it, they might take into consideration in viewing the situation when the deceased made the deadly assault upon them, if he did. If he made no such assault, appellants murdered him. If he did make the assault, and appellants, as ordinarily reasonable men, had reason to believe and did believe in the imminence of danger to their lives, or danger of great bodily harm to them, from such assault, they were justified in the killing on the ground of self-defense.

This case was tried at a time when the law in this jurisdiction was in some confusion owing to a concurring opinion in State v. Kidd, 24 N. M. 572, 175 P. 772, in which it was stated that a defendant could not complain of a conviction of a lower degree of unlawful homicide than was shown by the evidence. Since that time, however, the whole matter has been cleared up, and it is now the settled law that it is error, requiring reversal, to submit a degree of homicide not within the proofs, and over the objection of the defendant. See State v. Pruett, 27 N. M. 576, 203 P. 840, 21 A. L. R. 579; State v. Trujillo, 27 N. M. 594, 203 P. 846; State v. Crosby, 26 N. M. 318, 191 P. 1079; State v. Luttrell, 28 N. M. 393, 212 P. 739.

The appellants have been acquitted of murder, and cannot be shown to be guilty of manslaughter. They are therefore entitled to be discharged.

It follows that the judgment is erroneous and should be reversed, and the cause remanded, with directions to discharge the appellants; and it is so ordered.

BOTTS and FORT, JJ., concur.