258 P.2d 371

## STATE v. HORTON.

### No. 5571.

Supreme Court of New Mexico.

June 12, 1953.

O. O. Askren, Roswell, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley, Hilario Rubio, Asst. Attys. Gen., for appellee.

McGHEE, Justice.

The appellant was convicted of the crime of manslaughter and sentenced to a term of years in the state penitentiary, from which verdict and sentence this appeal is brought.

On the afternoon of June 2, 1951, the defendant went to the home of the deceased, Guadalupe Alvarez, and upon his arrival found the deceased was not at home. In a short time he left the home of the de-ceased and went to a neighboring house where he drank beer and wine. When it began to grow dark he again went to the home of the deceased, who had then re-turned. There was testimony he called the deceased out of the house, engaged him in conversation and began to quarrel with him about having seen deceased's car at the home of the former wife of the deceased; that the defendant told the deceased he had heard the deceased and his brother were going to whip him and he was there so he (the deceased) could do it, whereupon the defendant struck the deceased on the head, knocking him to the ground; that the deceased got up and they engaged in a fist fight during the course of which the defendant was upon the ground and the de-ceased was hitting him in the face while the defendant countered with blows to the deceased's stomach or back; that the de-ceased and the defendant got up and the defendant said he had an arm; the de-ceased said he had an arm, too, and drew a knife from his pocket and told defendant he did not want to use it, that the best thing for defendant to do was get away; that the defendant then inflicted the fatal wounds.

The defendant testified he and the de-ceased were on friendly terms; that they talked in front of the home of the de-ceased on the day in question and that he made a remark to the deceased about his car, whereupon the deceased lunged at him

and the defendant struck him on the side of the face; that the deceased then came at defendant with his knife, cutting the defendant on the hand as defendant was falling to the ground; that while on the ground with the deceased on top of him, the defendant took out his knife and inflicted the fatal wounds in self-defense.

The defendant first contends it was error for the trial court to refuse to instruct the jury to return a verdict of not guilty as to murder in the first degree and in submitting murder in the first degree to the jury for its consideration.

 It has long been established in this jurisdiction that even if there be error in an instruction as to the degree of the crime committed (though we do not decide there was error in this regard) it is not prejudicial to a defendant where he is convicted of a degree of crime which is properly submitted to the jury under the charge made and the evidence adduced upon the trial. State v. Vargas, 1937, 42 N.M. 1, 74 P.2d 62; State v. Analla, 1929, 34 N.M. 22, 276 P. 291; State v. Carabajal, 1920, 26 N.M. 384, 193 P. 406, 17 A.L.R. 1098; State v. Garcia, 1914, 19 N.M. 414, 143 P. 1012.

The defendant relies upon statements found in the cases of State v. Hunt, 1924, 30 N.M. 273, 231 P. 703, and State v. Reed, 1934, 39 N.M. 44, 39 P.2d 1005, 102 A.L.R. 995, to support his assignment of error. These cases are not applicable because they involved circumstances where a defendant was convicted of a degree of crime not within the evidence. The rule of these cases has not been followed since the adoption of Rule 35–4453, section 42–1301, 1941 Comp., and the enactment of section 1, c. 199, Laws of 1937.

 Secondly the defendant complains of the trial court's instruction No. 16, which reads as follows:

"In this case the defendant has interposed a defense of self-defense. In this connection, the Court instructs you that a person may repel force in the defense of his person against one who manifestly intends and endeavors by violence to take his life or to do him great bodily harm, and if a conflict ensues under such circumstances and life is taken, the killing is justifiable. It must appear, however, that the assault was imminently perilous, and unless there be a plain manifestation of an intent to take life or to do great bodily harm, no assault will justify the killing of the assailant. *A person is not compelled to flee from his adversary who assails him, but before he can justify the homicide the assault must be so fierce as not to allow the assailed to yield without manifest danger to his life or danger of great bodily harm.* But he is not compelled to retreat when assailed and he may stand his ground

and defend his own life or defend him-self from great bodily harm, and he may even pursue his assailant until all danger to his life or danger of great bodily harm to him is passed. And if you believe from the evidence that upon the occasion of the killing of the said Guadalupe Alvarez, the deceased made a violent assault upon the defendant, and that such assault was imminently perilous to the life of the defendant, or placed him in imminent peril of great bodily harm from the deceased, and that the defendant, in order to save his own life, or to save himself from great bodily harm, killed the deceased, then you are instructed that such killing was justifiable and in that event you will acquit the defendant." (Italics ours.)

It is to the italicized portion of the instruction that defendant directs our attention, urging that sentence and the one immediately following it are contradictory and that the court should have given his requested instruction No. 1, which reads as follows:

"The defendant defends against the information in this case on the ground that at the time he cut Guadalupe Alvarez, the defendant was acting in his own self-defense. Upon this subject the Court instructs you that a person attacked or threatened with an attack by another, may repel force by force in the defense of his person against one who manifestly intends and endeavors by violence of any kind to take his life or do him great bodily harm; and if, under such circumstances, or under circumstances so appearing to one acting as a reasonable man, life is taken, the killing is justifiable. But, to justify the killing, there must be an apparent design on the part of the assailant, then and there, or it must so appear to the person assailed, under the circumstances, acting as a reasonable man, either to take the life of the person assailed or inflict some great bodily harm upon him, and in addition to this there must be, then and there, imminent danger of such apparent design or purpose being carried out, or it must so appear to the person assailed from the standpoint of a reasonable man."

This instruction was approved in State v. Chesher, 1916, 22 N.M. 319, 161 P. 1108, and has been cited with approval in the following cases: State v. Beal, 1951, 55 N.M. 382, 234 P.2d 331; State v. Moore, 1938, 42 N.M. 135, 76 P.2d 19; State v. Nevares, 1932, 36 N.M. 41, 7 P.2d 933; State v. Roybal, 1928, 33 N.M. 187, 262 P. 929; State v. Calhoun, 1917, 23 N.M. 681, 170 P. 750; State v. Dickens, 1917, 23 N.M. 26, 165 P. 850.

The instruction given by the court is contradictory within itself and with the

other self-defense instructions. Certainly the italicized sentence is erroneous in telling the jury the defendant could not kill his assailant if he could yield without being killed. Webster's New International Dictionary (2d Ed.) gives as the definition of yield, in the sense in which it was used in the instruction, the following: "To give way; specif.: a. To give up the contest; to submit; surrender; succumb; to cease opposition." The sentence objected to is virtually tantamount to instructing the jury the defendant must retreat to the wall.

Instructions Nos. 18 and 19 given by the court correctly state the law of self-defense, and if No. 18 had been prefaced by a statement the defendant was relying upon self-defense there would have been no occasion to give requested instruction No. 1, as it would have been surplusage, but we cannot say these later instructions cured the evil inherent in instruction No. 16, nor can we say which the jury followed.

■ This case falls squarely under the rule of State v. Crosby, 1920, 26 N.M. 318, 191 P. 1079, that error committed in giving an incorrect instruction is not cured or rendered harmless by the giving of a correct instruction on the same subject and the rule should be applied here, as there, where the objectionable instruction was complete, unambiguous and certain. The rule of the Crosby case was expressly followed in State v. Sherwood, 1935, 39 N.M. 518, 50 P.2d 968, and in the case of State v. Cummings, 57 N.M. 36, 253 P.2d 321, 322. Cf. Downer v. Southern Union Gas Co., 1949, 53 N.M. 354, 359, 208 P.2d 815, and Hall v. Britt, 1931, 35 N.M. 371, 297 P. 987.

Like this Court in the cases cited, we find ourselves unable to determine which instruction the jurors followed, and feel we must hold the giving of instruction No. 16 constituted reversible error, especially in view of the fact the defendant had tendered a correct instruction on the matters involved in the given instruction.

■ The defendant bases one of his assignments of error upon the giving by the court of a supplemental instruction to the jury to the effect it was their duty to decide the case, if they could conscientiously do so. He concedes the giving of such instruction rests in the sound discretion of the trial court, and such is the law in this state. State v. Moore, 1938, 42 N.M. 135, 76 P.2d 19; State v. Hunt, 1920, 26 N.M. 160, 189 P. 1111; Territory v. Donahue, 1911, 16 N.M. 17, 113 P. 601, 604. But he contends it did not sufficiently caution the jurors the verdict to which they agreed must be their own verdict, and further urges it was untimely given, as the jury had only been deliberating six hours.

■ The supplemental instruction given by the court is almost exactly like that we

approved in Territory v. Donahue, supra, and contained the following language:

"To aid you in the further consideration of the case, I instruct you that, although the verdict to which a juror agrees must of course, be his own verdict, the result of his own convictions, not mere acquiescence in the conclusions of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you calmly, dispassionately and candidly, with a proper regard and deference to the opinions of each other."

The jury was adequately instructed in this regard, and the point is without merit.

As to the question of the timeliness of the instruction, while we cannot say there has been an abuse of discretion in this respect in the present case, yet we do feel the right of the trial judge to so instruct the jury should be exercised with caution, and only after a consideration of the gravity of the crime charged, the nature of the defense interposed, the complexity of the facts in dispute, as well as the time the jurors have been deliberating upon their verdict.

Lastly the defendant urges as error the admission of certain photographs of the deceased taken at a mortuary in Roswell. One of the photographs showed the front upper torso and head of the deceased, and the other his back. It is defendant's contention that as he admitted inflicting the wounds upon the deceased, and as there was no controversy respecting the location, nature and extent of the wounds, or that such wounds caused decedent's death, that such photographs were inadmissible. To a similar contention in State v. Jones, 1948, 52 N.M. 118, 192 P.2d 559, 562, we said:

"The photographs show the locus criminis; the height and width of the culvert, and the body of deceased before and after it had been taken out from under the culvert, and we do not see how they could have misled the jury in any way. They merely gave the jury a better description than could have been given by words. They cannot be characterized as gruesome or inflammatory. * * *

"By the plea of not guilty appellant imposed upon the state the burden of proving, beyond a reasonable doubt, every material issue in the case. Appellant testified that he had stopped the car next to the culvert, ordered the deceased to crawl into it head first and then himself crossed to the opposite side from which point, and in a stooped position, he had fired four or five times at the head and body of deceased. The pictures show with the exception of the body lying next to the culvert, exactly

what he detailed in his confessions and testimony. This tended to corroborate the testimony of state witnesses. (Citing cases.)"

The contention of the defendant with respect to the admission of the photographs in evidence is without merit.

For the error in the giving of instruction No. 16, the case is reversed and remanded for new trial.

It is so ordered.

COMPTON, COORS and LUJAN, JJ., concur.

SADLER, C. J., not participating.