This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**

Plaintiff-Appellee,

v. **No. 33,592**

**ANTOINE BRIGHAM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Public Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

**{1}** Defendant was convicted of aggravated battery with a deadly weapon, pursuant to NMSA 1978, Section 30-3-5(C) (1969), and resisting, evading or obstructing an officer, contrary to NMSA 1978, Section 30-22-1 (1981), following a domestic dispute that became violent and left the victim with multiple stab wounds. We conclude that the district court committed reversible error in denying Defendant's request for the stand your ground instruction, UJI 14-5190 NMRA. We therefore reverse and remand on the charge of aggravated battery with a deadly weapon and affirm Defendant's conviction for resisting, evading or obstructing an officer as there was sufficient evidence to support the jury's verdict in that regard.

**BACKGROUND**

**{2}** This case arises from a violent altercation between Defendant and the victim (Victim), after which both men claimed to be defending themselves from an initial attack by the other. Victim and Defendant shared a rented residence but Victim was the sole party on the lease, and the romantic relationship between the two had recently ended. Defendant had been arrested prior to the altercation giving rise to the charges in this case and was subject to a "no contact order" with regard to Victim. The specific provisions of this no contact order do not appear in the record before us.

**{3}** At trial, Victim and Defendant gave conflicting accounts of the altercation. Victim testified to the following: On the evening of October 25, 2011, he opened the

2

front door on his way to work to find Defendant who "had just been released." Victim allowed Defendant in to gather his belongings and told him that he could stay the night but he had to depart the next morning. When Victim returned from work on the morning of October 26, Defendant was still present in the home. Victim offered to drive Defendant to a shelter. Defendant became "upset" on the drive and then refused to stay at the shelter. While returning to the residence, Victim threatened to call the police and Defendant fled the vehicle. That evening, Victim went to work. When he returned on the morning of October 27, he saw evidence that Defendant had been in the house. Victim discovered Defendant in the basement and then returned upstairs to call 911 to have him removed from the home. After finishing his call with 911, Victim testified that Defendant stabbed him twice in the back suddenly. There was a struggle for the knife in which both men fell into an end table, smashing it. Both men stood up and Defendant stabbed Victim again in his right shoulder. Victim tossed Defendant into the dining room area and then attempted to disarm him. Defendant stabbed Victim again in the left side. While receiving several lacerations to his left hand in the process, Victim grabbed the knife away from Defendant. Defendant punched Victim twice in the face and then "took off running." Victim went to the front yard and laid down so that police could see him.

3

**{4}** On cross-examination, Victim, a member of the United States Air Force, testified that he had told people that Defendant was his cousin. Victim further testified that Defendant wanted to tell their friends about their personal relationship, which made Victim upset.

**{5}** Defendant testified to the following events as part of his defense: On October 27, he was in the kitchen getting something to eat when he heard the door open. Defendant went down to the basement where he had put an air mattress and was planning to stay until he left for Texas the next day. Victim came down the steps and eventually saw Defendant in the basement. They both returned upstairs to the living room where an argument ensued over whether Defendant was serious about leaving, what Victim had done with some money Defendant had left in a can, and whether Victim could "put out" Defendant. Victim became "fairly upset" and started swearing at Defendant and told him to get out but Defendant refused. Victim then went into the kitchen and returned with a knife. Victim paced with the knife and threatened Defendant. Defendant and Victim struggled over the knife, falling onto the side table. Defendant fell on top of Victim and retrieved the knife that had fallen out of Victim's hand. Defendant then testified to stabbing Victim in the back on his left side. Defendant got off of Victim and backed up into the dining room. Victim hit Defendant several times in the face and body and Defendant swung to protect himself. Victim

4

grabbed hold of the blade of the knife that Defendant was still holding and Defendant released it. Defendant then ran out the side door of the house. Defendant testified that he later returned to the house and took a shower. After getting out of the shower, Defendant testified that he heard noises outside the house and he saw someone standing outside the house in a suit and tie. He thought it was a police officer. Defendant then hid in the attic "because of the altercation" between Defendant and Victim.

{6}     The State called several police officers as witnesses. Sergeant Roger Dial testified that he responded to Victim's 911 call. He explained that the police left the house secured after processing the scene but later a neighbor called police to say an individual matching Defendant's description was seen going through a window into the house. Sergeant Max Stansell testified to knocking on the door to Victim's house for at least ten minutes and announcing "Police Department, come to the door" several times. The officers finally entered the house and it appeared to them that someone had gone into the attic, so they yelled up through the door that the Police Department was there and anyone up there should come down. Defendant did not respond. The officers then used a tactical mirror to look into the attic, and not seeing anyone close by, they used a chainsaw to widen the entry hole. Sergeant Dial and another officer gained entrance to the attic and eventually saw a person hiding under the insulation. The

5

officers called out to Defendant and he complied with their request to come forward. Defendant was then handcuffed and led out of the attic. Defendant was charged with attempted first degree murder, aggravated assault with a deadly weapon, resisting or evading arrest, tampering with evidence, and first degree kidnapping.

{7}     Prior to trial, the State filed a motion to exclude the introduction of any evidence regarding the Uniform Code of Military Justice, Air Force Punitive Policies, any testimony regarding an X-Tube account, possibly containing sexual or pornographic video(s), internet postings by Victim, or any sexual text messages. The district court ruled that the evidence was not relevant to the events of October 27, 2011. The district court did allow questions about Victim's relationship, including fights or threats made by Defendant with a knife and threats by Defendant to disclose Victim's alleged homosexuality.

{8}     After the close of evidence, Defendant requested two jury instructions that were denied by the district court. First, Defendant requested an instruction on attempted second degree murder, UJI 14-210 NMRA, as a lesser included offense to attempted first degree murder. The district court denied the requested instruction but gave the State's proposed attempted second degree murder instruction that did not include language regarding sufficient provocation. Second, defense counsel requested the standard self-defense instruction, UJI 14-5183 NMRA, and also requested UJI 14-

6

5190, the stand your ground instruction. In response, the State raised the legal issue of whether Defendant had a "right to be where he was" because he was in violation of the no contact order. The State explained that the evidence regarding the no contact order was never put before the jury because it was the result of a prior misdemeanor. The court agreed to give UJI 14-5183, but ruled that Defendant was not entitled to UJI 14-5190 "given the fact that [Defendant] was barred from even coming in the house and being in the presence of [Victim]."

{9}     Defendant was ultimately convicted of one count of aggravated battery with a deadly weapon pursuant to Section 30-3-5(C), and one count of resisting, evading or obstructing an officer contrary to Section 30-22-1. Defendant was acquitted of attempted first degree murder, tampering with evidence, and the district court also directed a verdict of acquittal for the charge of first degree kidnapping.

**DISCUSSION**

{10}     Defendant raises four issues on appeal. First, Defendant argues that the district court erred in denying his request to give UJI 14-5190, the stand your ground instruction. Second, he contends that the court erred in refusing to give UJI 14-210, for attempted second degree murder, together with step-down instructions, attempted voluntary manslaughter and misdemeanor aggravated battery. Third, Defendant asserts that the court improperly excluded evidence of "other acts," arguably showing

7

that Victim was the first aggressor. Fourth, Defendant argues that there was insufficient evidence to support his conviction for resisting or evading an officer.

{11} We conclude that the district court erred in denying Defendant's request to give UJI 14-5190, the stand your ground instruction. In light of this determination, it is unnecessary to address Defendant's second and third claims of error. Finally, we conclude that there was sufficient evidence to uphold Defendant's conviction for resisting or evading an officer.

**I.      Denial of Defendant's Requested Stand Your Ground Jury Instruction Was Error**

{12} The district court's rejection of Defendant's requested jury instruction is reviewed by this Court de novo "because it is closer to a determination of law than a determination of fact." *State v. Lucero*, 1998-NMSC-044, ¶ 5, 126 N.M. 552, 972 P.2d 1143. "When considering a defendant's requested instructions, [the appellate courts] view the evidence in the light most favorable to the giving of the requested instructions." *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 (alteration, internal quotation marks, and citation omitted). Furthermore, because Defendant has a fundamental right to present his theory of defense to the jury when it is supported by the evidence, an "adequate instruction on self[-]defense is the duty of the courts where it finds support in the evidence." *State v. Baxendale*, 2016-NMCA-048, ¶ 20, 370 P.3d 813 (alteration, internal quotation marks, and

8

citation omitted). "The test is not how the judge would weigh the self-defense evidence as a fact[-]finder; the true test is whether any juror could be justified in having a reasonable doubt about whether the accused acted in self-defense." *State v. Guerra*, 2012-NMSC-014, ¶ 14, 278 P.3d 1031.

**{13}** Here, Defendant requested that UJI 14-5190 be given to the jury. The jury instruction states: "A person who is threatened with an attack need not retreat. In the exercise of his right of self[-]defense, he may stand his ground and defend himself." UJI 14-5190. The district court determined that Defendant was not entitled to a stand your ground instruction because, at the time of the altercation, he was subject to a no contact order. However, this order was not entered into evidence or presented to the jury. This Court is unable to review the restrictions or prohibitions contained in the order. We assume that the district court took judicial notice of the no contact order as initially the two cases against Defendant had been joined and the district judge was presiding over both cases. *See Lopez v. LeMaster*, 2003-NMSC-003, ¶ 32, 133 N.M. 59, 61 P.3d 185 ("We see no reason not to permit the court to take judicial notice of its own records."). Defendant, who was represented by the same attorney in both cases, offered no objection to the existence or recognition of the no contact order by the district court. As a result, we accept the undisputed factual proposition that,

9

pursuant to the no contact order, Defendant was not in a place that he was lawfully permitted to be when he was inside Victim's house at the time of the altercation.

{14} Based upon viewing the evidence in the light most favorable to giving Defendant's requested stand your ground instruction, the State must provide us with sufficient legal support for the district court's denial of UJI 14-5190. "When a defendant presents evidence of self-defense, the jury instructions must inform, 'in no uncertain terms,' that the [s]tate bears the burden of disproving self-defense." *State v. Southworth*, 2002-NMCA-091, ¶ 10, 132 N.M. 615, 52 P.3d 987 (alteration, internal quotation marks, and citations omitted). When acting in self-defense, a person may use no more force than is reasonably necessary to avoid the threatened harm. *See* NMSA 1978, § 30-2-7 (1963) (justifiable homicide by citizen); *see also* UJI 14-5181 NMRA (self-defense; nondeadly force by the defendant). Furthermore, a person need not retreat even though he could do so safely. *See State v. Horton*, 1953-NMSC-044, ¶ 9, 57 N.M. 257, 258 P.2d 371. Instead, "an individual normally has an unqualified right to stand his ground against attack." *Southworth*, 2002-NMCA-091, ¶ 11. One potential exception to this "unqualified right" occurs when the rights of a trespasser to stand his ground compete with the rights of the occupants to defend their home. *Id.* In such instances, the competition between these two distinct interests requires

"coordinat[ion] and balance."[1] *Id.* As a result, whether the level of force that a trespasser is met with by the legal occupants is reasonable, and therefore, whether a trespasser is entitled to stand his ground and use reasonable force in self-defense, is a question that must be decided by the jury. *See id.* ¶ 15. Where the evidence properly presents this factual question, the stand your ground instruction is required unless the victim was justified in using potentially deadly force in the encounter. *See id.* Here, neither version of the conflicting factual scenarios presented at trial appears to justify the use of potentially deadly force by the first aggressor, irrespective of whom the fact-finder determined to be the first aggressor. Thus, we conclude that the State's argument—Defendant was not entitled to UJI 14-5190 due to the no contact order and his status as a trespasser—was error and we must address the proper application of our *Southworth* decision to Defendant's claim of self-defense. *See* 2002-NMCA-091, ¶¶ 14-19.

{15}     We hold that there was sufficient evidence to support giving the stand your ground instruction pursuant to UJI 14-1590. Additionally, we hold that the failure to

---

[1]In *Southworth,* this Court adopted the reasoning of the Colorado Supreme Court in *People v. Toler*, 9 P.3d 341, 352 (Colo. 2000), stating that, "trespassers have the right to self-defense without having to retreat to the wall if an owner or occupant of [the] property confronts the trespasser with unlawful force." *Southworth*, 2002-NMCA-091, ¶ 14 (internal quotation marks and citation omitted). *Southworth* directs that two jury instructions would be required in such cases. *Id.* ¶ 15.

do so was error because it did not allow the jury to properly address whether Defendant acted in self-defense. Specifically, Defendant's testimony that Victim was the first aggressor with a knife, together with the testimony indicating that Defendant had the opportunity to retreat from the house, provided sufficient evidence to support the giving of a stand your ground instruction. *See Southworth*, 2002-NMCA-091, ¶¶ 16-19. Under Defendant's version of the attack, Victim initiated deadly force in a circumstance that a jury could determine to be unjustified and unlawful. If the jury agreed that Victim unlawfully acted as the first aggressor with the knife, then Defendant, irrespective of the no contact order and his potential status as a trespasser, would have been entitled to stand his ground and lawfully defend himself from the attack. *See id.* ¶ 15.

**{16}** The State argues that the jury verdict does not support Defendant's contention that Victim was the first aggressor and that he was justified in standing his ground. If the jury had accepted the testimony that Victim was the first aggressor with a knife, the State argues that Defendant would have been acquitted "because [Defendant would have been justified in his failure] to retreat." This argument involves total speculation by the State and fails to address the need for proper self-defense instructions that are supported by the evidence. *See State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230 ("[E]rror occurs when jury instructions fail to inform the

jurors that the [s]tate has the burden of proving an essential element of a crime and we are left with no way of knowing whether the jury found that element beyond a reasonable doubt." (internal quotation marks and citations omitted)). "Where an evidentiary basis for the instruction has been laid, UJI 14-5190 informs jurors of what is reasonable . . . and it is therefore critical to understanding the third element of a general self-defense instruction." *State v. Anderson*, 2016-NMCA-007, ¶ 14, 363 P.3d 306. As such, once the propriety of giving UJI 14-5190 has been determined, "the failure to provide the no-retreat instruction that informed a determination critical to the case [is] akin to a missing elements instruction" and constitutes reversible error. *Anderson,* 2016-NMCA-007, ¶15; *see id.* ¶ 19 (addressing the stand your ground instruction only in the context of a fundamental error analysis when sufficient evidence was presented to support giving this instruction and it was mistakenly omitted). We therefore must presume that the jury failed to unanimously consider and hold the State to its burden of proving that Defendant did not act in self-defense when he stood his ground and failed to retreat from Victim's house. As a result, the district court erred in denying the requested UJI 14-5190 on the basis of the no contact order. We reverse Defendant's conviction for aggravated battery with a deadly weapon. However, because the Victim's testimony and version of the attack presented sufficient evidence to support Defendant's conviction for this charge, we remand this

matter to the district court for a new trial on the charge of aggravated battery with a deadly weapon. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 1, 150 N.M. 654, 265 P.3d 705 (stating that double jeopardy does not bar a remand for a new trial where sufficient evidence was presented to support the jury's verdict).

## II. Sufficient Evidence Exists to Support Defendant's Conviction for Resisting or Evading an Officer

{17}   "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* Because the jury is free to reject Defendant's version of the facts, contrary evidence supporting acquittal does not provide a basis for reversal. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. However, to determine the sufficiency of evidence, we are required to scrutinize the evidence and supervise "the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* (internal quotation marks and citation omitted). So long as there is sufficient evidence to support the verdict, this Court does not re-weigh the evidence

14

and may not substitute its judgment for that of the fact finder. *State v. McGhee*, 1985-NMSC-047, ¶ 21, 103 N.M. 100, 703 P.2d 877.

{18} Defendant was convicted of resisting, evading, or obstructing an officer pursuant to Section 30-22-1. The jury was instructed that in order to convict Defendant, it had to find beyond a reasonable doubt each of the following elements of the crime:

    1.    Officer Max Stansell was a peace officer in the lawful discharge of his duty;

    2.    [D]efendant knew Officer Stansell was a peace officer;

    3.    [D]efendant, with the knowledge that Officer Stansell was attempting to apprehend or arrest [D]efendant, fled, attempted to evade, or evaded Officer Stansell[, and];

    4.    This happened in New Mexico on or about the 27th day of October, 2011.

The jury was also instructed that the State must prove beyond a reasonable doubt that Defendant acted intentionally when he committed the crime.

{19} As previously set forth in more detail, the State presented evidence that Defendant re-entered the residence after the altercation with Victim, and while inside, he saw someone who he thought to be a police officer. Defendant then hid in the attic. Sergeant Stansell testified to knocking on the door for at least ten minutes and announcing "Police Department, come to the door" over and over with no response

by Defendant. After the officers entered, they continued yelling their presence and commanding that anyone in the attic should come down. Defendant admitted to hearing at least one officer identify himself as the police when they knocked on the attic door but he remained hidden under the insulation until discovered and ordered to come forward. This evidence is sufficient to establish each element of the offense, including the requisite knowledge and intent. *See State v. Caldwell*, 2008-NMCA-049, ¶ 34, 143 N.M. 792, 182 P.3d 775 ("Like knowledge, a defendant's intent is rarely subject to direct proof and may be proved by circumstantial evidence.").

**CONCLUSION**

{20}    We reverse Defendant's conviction for aggravated battery with a deadly weapon and remand this charge to the district court for a new trial. We affirm Defendant's conviction for resisting, evading or obstructing an officer.

{21}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**

16