39 P.(2d) 1005

**STATE v. REED et al.**

No. 3947.

Supreme Court of New Mexico.

Nov. 21, 1934.

Rehearing Denied Jan. 21, 1935.

John J. Kenney and Earl D. Kenney, both of Santa Fé, for appellants.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

WATSON, Chief Justice.

These appellants were put to trial on an information charging murder in the first degree, and were convicted of murder in the second degree. The only issue of fact was upon the defense of alibi. The point mainly relied upon for reversal is that the court erred in submitting the facts as capable of sustaining a verdict of murder in the second degree.

The facts are sufficiently disclosed in an accompanying dissenting opinion.

The first count of the information charged that appellants, while armed, made an assault on the deceased with intent to rob him of money, and that, while so engaged, they took him into their hands, tied and bound him, and placed him near and onto a fire, and set fire to his clothing and body, thereby inflicting mortal burns from which he died.

The second count alleged the same acts, but omitted the allegations that appellants were armed and that their assault was made with intent to rob.

The first count was evidently meant to charge "a murder committed in the perpetration of or attempt to perpetrate any felony," by statute, murder in the first degree. Comp. St. 1929, § 35-304; State v. Welch, 37 N. M. 549, 25 P.(2d) 211. At the close of the case the court put the state to an election. It stood on the second count. The first thus went out of the case and cannot aid the verdict.

The second count was no doubt meant to charge "murder * * * perpetrated by means of * * * torture," also by statute murder in the first degree. Comp. St. 1929, § 35-304. Whether it would have sustained the theory of "murder * * * perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life," is a question we need not determine.

The state made a case which would have sustained a conviction of murder in the first degree on the theory of the first count. But we cannot convict appellants of a crime of which, because of the withdrawal of that count, the jury was not at liberty to convict them, and of course did not. The verdict must stand the test of the second count.

■■ The verdict must also stand the test of the instructions, the unquestionable law of the case for the jury. That eliminates the possible theory of "murder * * * perpetrated by any act greatly dangerous to the lives of others," etc. The jury, entirely uninstructed on this theory, could have based no verdict upon it.

■ The jury was so instructed that the verdict represents this: That the homicide was effected by making an assault upon the deceased, tying and binding him and placing him at, near, and onto a fire, inflicting on his body mortal burns of which he died, and that "such killing was unlawfully, feloniously, wilfully and premeditatedly done by the said Roy Reed and Leonard Beck, with malice aforethought on the part of the said Roy Reed and Leonard Beck then and there to effect the death of the said Lee Marshall"; but that such killing was not done "from a deliberate and premeditated design" to effect his death; that is to say, that if, from malice aforethought to effect death, one shall kill another by means of torture, his crime is murder in the second degree if the jury consider the killing not to have been done with deliberation.

A mere reading of the statute demonstrates that this is a misconception: "All murder which shall be perpetrated by means of * * * torture * * * shall be deemed murder in the first degree." Comp. St. 1929, § 35-304.

■■ It is firmly established that it is error to refuse to instruct on a degree of homicide of which there is substantial evidence and error to submit a degree of homicide of which there is no evidence. State v. Hunt, 30 N. M. 273, 231 P. 703.

Very recently we have held it error to leave it to the jury to determine whether a homicide committed in the perpetration of a felony is murder of the first or of the second degree. State v. Welch, 37 N. M. 549, 25 P. (2d) 211.

We should perhaps not fail to mention a grave doubt whether any conviction could have been sustained under these instructions. A purpose to rob the deceased of his money or to extort it is easily to be found in the evidence. The inference of a purpose to kill him is not so readily to be drawn, if at all. By the instructions the jury, if it was to convict at all, was required to find the presence of malice aforethought to effect the death of the deceased. The evidence strongly suggests murder committed in perpetrating, or attempting to perpetrate, a felony. It possibly suggests murder perpetrated by acts greatly dangerous to the life of the deceased, and indicating on the part of appellants depraved minds, regardless of human life. But these theories did not find

their way to the jury. This doubt we do not pursue; it not being the question presented.

■ There was evidence that appellants had been drinking before they commenced, and while they were engaged in, their inexpressibly cruel treatment of the deceased. This is the single matter pointed to by the state in justification of the submission of murder in the second degree. This evidence, it is urged, would have warranted the jury in finding appellants incapable of that deliberation essential to murder in the first degree. Cf. State v. Brigance, 31 N. M. 436, 246 P. 897.

Passing the question whether this doctrine is applicable to murder by torture, it is plain that the point is without merit. Intoxication could have had nothing to do with the verdict. The defense did not invoke it to avoid the extreme penalty. The state did not invoke it as a safeguard against acquittal. The judge did not submit or mention it. If the jury took it into consideration, it did so improperly and without guidance as to its legal effect.

In the decision of this case we are faced with the alternatives of sustaining the present verdict or of discharging the appellants. They have been tried and acquitted of the crime of which they may be guilty, murder in the first degree. The Bill of Rights forbids that they be put in jeopardy again for that offense. N. M. Const. art. 2, § 15. It would be futile, of course, to put them to trial again for an offense of which the evidence absolves them.

So it is that we have been industrious in the search for some means or theory which the Attorney General may have overlooked to warrant sustaining this probably just, but unlawful, verdict.

■ In our conferences there has once again been advanced the contention that the error in the instructions and in the verdict is nonprejudicial and so not reversible; that men guilty of murder in the first degree are fortunate and have nothing of which to complain if adjudged guilty of a lesser offense and subjected to a lesser punishment. That contention has been fully considered and definitely rejected here in recent years. State v. Pruett, 27 N. M. 576, 203 P. 840, 846, 21 A. L. R. 579. There this court undertook to set it at rest "on account of the importance of the question, and also on account of the constant recurrence of the question before the court." See, also, State v. Trujillo, 27 N. M. 594, 203 P. 846, State v. Hunt, 30 N. M. 273, 231 P. 703.

It is needless to go over the ground again. In deciding as it did, this court was fully mindful of the unfortunate consequences which confront us here. Every argument that supports the opposite doctrine was weighed. If we were doubtful of the wisdom of the decision, we should still adhere to it. We consider it not only the part of wisdom but a high duty here to pursue a consistent course. We shall not add to the confusion now existing in the law of homicide by reopening the question.

We may pause to say that it is not certain that, if we should overrule State v. Pruett,

supra, it would end this appeal. It might still leave open, as a ground for rehearing, the question above-suggested, whether in this particular case, under the instructions given, in view of the evidence, a conviction of murder in the first degree could have been upheld. If it could not, the whole point is without merit.

An opinion has also found lodgment that the doctrine of the Pruett Case may be upheld where, as there, the conviction was of involuntary manslaughter, all the evidence showing murder; or where, as in the Trujillo Case, the conviction was of voluntary manslaughter; and that we may still refuse to follow it in this case where the conviction is of second degree murder.

An arbitrary distinction of this kind could be easily made. To support it on principle seems impossible. There is plenty of argument for a change of policy, but none that we are able to discern for the distinction. To adopt it would be merely to accept the reasons and authorities heretofore weighed and found wanting; to stand by the Pruett Case as precedent, while rejecting it in principle.

■■ After all, it is in effect urged, murder is but "the unlawful killing of a human being, with malice aforethought." Comp. St. 1929, § 35-301. Murder in the first degree is that form of murder in which there is present the deliberation which constitutes "intensified or first degree malice." State v. Smith, 26 N. M. 482, 194 P. 869, 872. In every murder there must be present a murder in the second degree, since no one but the jury may say whether the malice was ordinary malice aforethought or "intensified or first degree malice." A refusal to find the latter form of malice leaves a residuum of ordinary malice to operate on the case and make it murder in the second degree.

■■ This theory is no doubt sound in so far as it leads to the view that a *charge* of murder in the first degree "necessarily includes" a *charge* of murder in the second degree. We have so held with respect to voluntary manslaughter. State v. Burrus, 38 N. M. 462, 466, 35 P.(2d) 285, 288 (on motion for rehearing).

■■ It is true also that in the ordinary homicide case evidence which will satisfy the requirements of murder in the first degree will sustain a conviction of murder in the second degree; it being within the jury's province to determine whether the evidence discloses the one kind of malice or the other. That is not to say that the law is indifferent as between the two degrees. We venture to suggest that it is too refined; the distinction serving to hinder administration rather than to aid it. But the distinction is expressed in general terms which the jury is left to apply to the facts as it finds them. In this sense, even from the standpoint of fact, a second degree case is generally included within a first degree case.

■■■ But, where the law descends to particulars and prescribes that a murder perpetrated by means of torture is murder in the first degree, and the jury finds that the homicide was thus effected, how can it be said that murder in the second degree is included? If we may judge the legislative in-

tent with respect to these special forms of murder by the distinction made plain as to ordinary murder, we may well say that the use of torture is made conclusive of that deliberation which characterizes murder in the first degree. The employment of that means of effecting the homicide deprives the jury of its prerogative of determining whether the murder is of the one degree or of the other. In such a case there can be no compromise. The accused must be guilty in the first degree or not guilty at all. We so considered in State v. Welch, supra, as to murder committed in the perpetration of a felony. In this respect the cases are not distinguishable. In the one case the collateral unlawful intent supplies the malice aforethought and the deliberation; in the other, the torture employed supplies the deliberation. For the same reason that the Welch jury could not lawfully hold a homicide committed while perpetrating a felony to be a murder without deliberation, this jury could not lawfully deny the deliberation in a murder committed by means of torture. In both cases the court tied the jury to the single theory of fact and permitted it to ignore the consequences which the statute attaches.

█ And, finally, there has not been lacking the suggestion that the Legislature has reversed the policy or principle of the Pruett Case. Since 1929 it has been provided by statute that " * * * the jury trying the cause may find the defendant or defendants guilty of any offense the commission of which is necessarily included in that with which he or they are charged." Comp. St. 1929, § 35-4409.

That this authorizes the court to submit, and the jury to convict of, a lesser degree of homicide of the commission of which there is evidence, we have just decided. State v. Burrus, supra. Does it go further and authorize the jury to convict of an offense of which there is no evidence? According to the better reason and authority, we consider that the answer should be negative. See the decisions cited in Bandy v. State, 102 Ohio St. 384, 131 N. E. 499, 21 A. L. R. 594, and particularly Sparf v. United States, 156 U. S. 51, 15 S. Ct. 273, 39 L. Ed. 343, 10 Am. Cr. Rep. 168.

█ Oklahoma is one of the jurisdictions "committed to the doctrine that no prejudice can result to a defendant if convicted of a lower degree of homicide than warranted by the evidence." Wilmoth v. State, 20 Okl. Cr. 453, 203 P. 1055, 1057, 21 A. L. R. 590. Its statutory provision, similar to ours just quoted, has probably influenced its courts in so holding. Cf. Irby v. State, 18 Okl. Cr. 671, 197 P. 526. A familiarity with State v. Taylor, 33 N. M. 35, 261 P. 808, 809, and State v. Burrus, supra, might suggest that we have adopted the Oklahoma statute, and with it the construction given it by the Oklahoma courts of last resort.

It is no doubt true in a sense that we did adopt the Oklahoma statute, and that we did intend some of the results it had been held to have in that state. We did not adopt it verbatim, however, nor in toto, as will be disclosed by comparing our Comp. St. 1929 § 35-4409 (proviso), with the Oklahoma provision as quoted in the Taylor decision. Nor

did we place it in the same setting. As mentioned in the Taylor Case, it is in Oklahoma a "distinct statutory provision"; that is, distinct from the act on indictments and informations which we were there considering, and which we found to have been adopted from Oklahoma, and as to 'the construction of which we held ourselves controlled by Oklahoma decisions. In fact, it appears in the law of verdicts (Comp. St. Okl. 1921, § 2740), not in the law of indictments and informations (Id. § 2547 et seq.). Here it is a proviso to a section concerned only with indictments and informations; a section which had at least caused apprehension that there could be no conviction of a degree of homicide not specially pleaded in a separate count. Its purpose, as we considered in State v. Burrus, supra, was to preclude the necessity of separately pleading each degree of homicide, and, under a single charge of murder in the first degree, for instance, to admit proof and conviction of a lesser degree of homicide. Moreover, we adopted it under a title which gave no notice or intimation of a change in the policy or doctrine here in question. The act (Laws 1929, c. 48) is entitled, "An Act Amending Section 9, Chapter 145 of the Session Laws of 1925, Relating to the *Forms of Indictments and Informations*."

To summarize the matter: In 1925 our Legislature saw fit to adopt Oklahoma's statute on criminal pleading. Re-examining the matter in 1929, in the light of State v. Taylor, supra, it found reason to fear that section 9 of the borrowed act (Laws 1925, c. 145) reversed the former policy as to proof of conviction of a lesser degree of homicide under a charge of a greater. Informed by the Taylor decision that the "rigor" of the Oklahoma statute was modified in that respect by the "distinct statutory provision," the Legislature took that provision for the particular purpose it then had in view. It adopted it, not as a distinct provision, with independent meaning as to the power of the jury, but as a proviso to the statute it desired to modify.

Under these circumstances, we do not consider that in adopting the proviso into our law of pleading we adopted the Oklahoma interpretation of the language as a part of its law of verdicts. We consider such result to have been absent from the legislative mind and such interpretation to be unwarranted by the context. We do not feel justified in invoking the proviso to effect an unintended reversal of the policy theretofore firmly established and strongly declared by this court.

Impressed as we are that these appellants go unwhipped of justice, it is not for us to vary the Constitution and laws. We do feel impelled, however, to recur to the opinion we have ventured, that the lawmakers have introduced unnecessary and impractical refinements into the law of homicide. Theoretically, their nice classification of murder into two degrees as enacted in Comp. St. 1929, § 35-301, and expounded in State v. Smith, supra, well satisfies our sense of justice. But the trial of murderers is a practical business. That the distinctions are too subtle for jurors will be evident to all who read the instructions given in any murder case.

That they are just as baffling to the judges, hundreds of conflicting decisions prove. At the risk of exceeding our duty, we suggest an abolishment of these refinements by legislative repeal. Let "murder" be, as at the common law, "The unlawful killing of a human being, with malice aforethought"; let the jury determine the guilt of the accused, perhaps with power to recommend clemency.; and let the court fit the punishment to the crime proven.

Our conclusion is that the judgment must be reversed, and that the cause must be remanded, with a direction to discharge the appellants.

It is so ordered.

SADLER and ZINN, JJ., concur.

HUDSPETH, Justice (dissenting).

This opinion was the first considered by the court, and, since the statement of facts therein is satisfactory to the other members of the court, I am filing it without modification as my dissenting opinion.

Shortly after dark on February 14, 1933, Lee Marshall, an old man, alone on a ranch forty miles from Tucumcari in Quay county, opened the door of his dugout for the purpose of throwing out dish water. Two masked men were near the door. They ordered Marshall to throw up his hands and one of them shot a hole through the dish pan. They struck Marshall down, bound him hand and foot, and, for a period of time estimated by Marshall at from an hour and a half to two hours, they tortured him in an endeavor to make him tell where his money was hidden. They took off his clothing, and appropriated 25 cents and a pocketknife found in his pockets. Finally, after dragging Marshall about with a chain about his neck, striking him on the head, and burning his feet and other parts of his body with a torch, they took him back to the dugout from a garage 100 feet away, poured gasoline or coal oil over his underwear, and either set fire to it or his underwear was ignited from a fire on the floor of the dugout. They put out the fire, tearing the underclothes off after Marshall had received burns from which he died two days later, threw him on the bed, covered him up, and departed. The men were drinking whisky. Marshall said he thought the boys were just trying to "play drunk" on him until they got so rough. They took several drinks while they were torturing Marshall.

Roy Reed and Leonard Beck were charged with the crime, and were convicted of murder in the second degree upon trial in Curry county, where the cause was taken on change of venue. From the judgment and sentence of the court, this appeal is prosecuted.

The evidence would have supported a verdict of murder in the first degree. The state made a submissible case which was greatly strengthened by the admissions of the appellants, who testified in their own behalf. They denied being present at the scene of the crime, and relied upon an alibi. They claimed to have spent the evening with two young women in Tucumcari. According to the state's witnesses, these young women were in at-

tendance on a party at the house of a neighbor on the evening of St. Valentine's Day, the 14th of February, and the defendants were not present.

The main point relied upon by appellants is "that the court erred in submitting to the jury over the objections of the defendants a degree of unlawful homicide not within the proofs, to wit, the question of murder in the second degree." Objections were timely made by the appellants, and exceptions taken to the instructions of the court submitting murder in the second degree.

In State v. Brigance, 31 N. M. 436, 246 P. 897, we held that (syllabus 1) "a homicide committed by one so intoxicated as to be incapable of deliberation is not murder in the first degree." Brigance shot his victim, and, in addition to the requested instruction on intoxication, pleaded self-defense. In the case at bar, in which it will be noted there was evidence of intoxication, the information, modeled after the indictment in Territory v. Vialpando, 8 N. M. 211, 42 P. 64, charged murder in the first degree by torture as defined therein. The question arises as to whether or not the doctrine of the Brigance Case, supra, is applicable to the crime of murder by torture under our statute.

In Territory v. Vialpando, supra, the territorial court said: "Our statute defining murder generally says it is the unlawful killing of a human being with malice aforethought, express or implied, and it declares that all murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of willful, deliberate, and pre-

meditated killing, etc., shall be deemed murder in the first degree. * * * It is to be noticed that to elevate any other murder to the grade at which 'murder perpetrated by means of poison, or lying in wait, torture,' is placed by our statute, the killing must be willful, deliberate, and premeditated. In other words, an unlawful killing of a human being, with malice aforethought, perpetrated by torture, is murder in the first degree, without other description, such as 'willful, deliberate, and premeditated.' "

At common law, deliberation was not essential to constitute an unlawful homicide murder.

"By the common law, neither deliberate premeditation, nor express malice or intent to kill, is required to make an unlawful homicide murder, but malice may be implied from the use of a deadly weapon or other significant facts." Tucker v. U. S., 151 U. S. 164, 14 S. Ct. 299, 301, 38 L. Ed. 112.

And, under a New York statute providing that no act committed by a person while in a state of voluntary intoxication should be deemed less criminal by reason of his having been in that condition, but that the fact the accused was intoxicated might be taken into consideration in determining the purpose, motive, or intent, the following rule was laid down: "When criminal intent in general is all that need be established, the drunken defendant is treated as if he knew the consequence of his acts; but where a particular or specific intent must be established, if the jury find that the mind of the defendant was so obscured by drink that he was incapable of

forming that intent, it may justify itself in the reduction of a charge." People v. Koerber, 244 N. Y. 147, 155 N. E. 79, 81.

In the case quoted, the court reversed a judgment of first degree murder for a killing while in the commission of robbery from the person killed on the ground that a proper instruction had not been given; there being a question for the jury as to whether defendant was too drunk to form a specific intent to commit robbery.

See, also, with reference to the proper instructions, Milburn v. Commonwealth, 223 Ky. 188, 3 S.W.(2d) 204, where it is held that drunkenness should not be singled out from the other proof, and the jury should not be instructed that it mitigates the offense.

It thus appears both by reason and authority that intoxication is no defense to, and that the doctrine of State v. Brigance, supra, does not apply to, murder affected by poison or torture, for deliberation is not of the essence of the offense, being eliminated by the statute. See Director of Public Prosecutions v. Beard, [1920] A. C. 479, 12 A. L. R. 846 and annotation; annotation, 79 A. L. R. 897; State v. Reagin, 64 Mont. 481, 210 P. 86; State v. Le Duc, 89 Mont. 545, 300 P. 919. Compare as to materiality of deliberation, State v. Newsome, 195 N. C. 552, 143 S. E. 187.

This brings us to a consideration of the effect of the trial court's error in submitting to the jury instructions as to second degree murder.

Appellants, who made no objections to the form of the instructions submitting murder in the second degree, plant themselves squarely on the proposition that the crime was murder in the first degree or nothing, and that, under State v. Hunt, 30 N. M. 273, 231 P. 703, and other cases cited in their brief, it was reversible error for the trial court to submit the lesser degree of homicide in the absence of evidence supporting the charge; and, since the conviction of murder in the second degree is in effect an acquittal of the only crime of which they could be guilty, that is, murder in the first degree, they are entitled to be discharged. Notwithstanding many criminals have escaped punishment under the doctrine contended for in this state and other jurisdictions, some of the ablest jurists the country has produced, among them the late Frank W. Parker, who for a third of a century graced the bench of this commonwealth, have insisted upon its maintenance. The reason for this time-honored rule has been thus stated: "For obviously, if the defendant in such case is not guilty of murder in the first degree, his liberty should not be dickered away by a compromise verdict upon another degree which is supported by no evidence."

See Bandy v. State, 102 Ohio St. 384, 131 N. E. 499, 21 A. L. R. 594, and annotations; State v. Pruett, 27 N. M. 576, 203 P. 840, 21 A. L. R. 579, supporting the proposition advanced by appellants.

Other courts have taken the view that the error in submitting the included offense was not prejudicial to the defendant, and that he should not be allowed to complain if the jury shows mercy to him and finds him guilty of a lesser degree. A leading case is State v. Yar-

gus, 112 Kan. 450, 211 P. 121, 27 A. L. R. 1093. In that case the court said:

"Maude Yargus was charged with committing murder in the first degree by means of poison. She was convicted of murder in the second degree, and appeals. In her behalf it is contended that murder by the administration of poison is necessarily murder in the first degree, and cannot constitute murder in the second degree; that the trial court erred in instructing the jury that the defendant might be found guilty of second degree murder; and that for these reasons a motion in arrest of judgment should have been sustained, or at all events a new trial should have been granted. * * * The view that the defendant cannot be heard to complain because, under evidence which really justified only a conviction of the offense charged or an acquittal, she was convicted of a less serious charge included within it, is supported by the following cases: Price v. State, 82 Ark. 25, 100 S. W. 74; People v. Washburn, 54 Cal. App. 124, 201 P. 335; State v. Dimmitt, 184 Iowa, 870, 169 N. W. 137; State v. Rodgers, 91 N. J. Law, 212, 102 A. 433; Ryan v. State, 8 Okl. Cr. 623, 129 P. 685; Hunter v. State, 6 Okl. Cr. 446. 119 P. 445; Wyatt v. State, 55 Tex. Cr. R. 73, 114 S. W. 812; Jenkins v. State, 60 Tex. Cr. R. 465, 132 S. W. 133; Gatlin v. State, 86 Tex. Cr. R. 339, 217 S. W. 698. See, also, Johnson v. State (Tex. Cr. App.) 45 S. W. 901.

"The contrary rule obtains in Georgia (Kendrick v. State, 113 Ga. 759, 39 S. E. 286), and was in force in Missouri (State v. Mahly, 68 Mo. 315 [3 Am. Crim. Rep. 183]) until changed by statute (State v. Mittner, 247 Mo. 577, 153 S. W. 1020).

"The weight of judicial opinion seems to favor the conclusion we have reached, but we base it, not upon authority, but upon the soundness of the principle that the defendant should not be allowed to derive an advantage from an error from which she suffered no injury, but, on the contrary, derived a benefit."

Other cases supporting the doctrine approved in the Yargus Case, supra, are Lindsey v. State, 69 Ohio St. 215, 69 N. E. 126; State v. Allison, 330 Mo. 773, 51 S.W.(2d) 51, 85 A. L. R. 471; Sharp v. State, 175 Ark. 1083, 3 S.W.(2d) 23; State v. Phinney, 13 Idaho, 307, 89 P. 634, 12 Ann. Cas. 1079, 12 L. R. A. (N. S.) 935 and note.

In Irby v. State, 18 Okl. Cr. 671, 197 P. 526, 531, the court considered that: " * * * Even if the evidence did not warrant an instruction for manslaughter, it is an error in the defendant's favor of which he has no cause to complain. Under the provisions of the Code of Criminal Procedure—'The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.' Section 5923, Rev. Laws."

In November, 1927, we referred to the above-quoted Oklahoma statute in distinguishing the condition of their laws on this subject from ours. See State v. Taylor, 33 N. M. 35, 261 P. 808. At the next session of the Legislature the following was added by way of amendment (chapter 48, L. 1929)

to section 9 of chapter 145, Laws 1925: "Provided the jury trying the cause may find the defendant or defendants guilty of any offense the commission of which is necessarily included in that with which he or they are charged."

This amendment was passed at a time of widespread public dissatisfaction with so-called "technicalities" of the law which permitted criminals richly deserving of some punishment to go unwhipped of justice. Some significance may be attached to the fact that, at the time of the enactment quoted, the defendant in State v. Stewart, 34 N. M. 65, 277 P. 22, a case which attracted a great deal of attention, especially in the southern half of the state, was advancing the contention on his second appeal, then pending, that the evidence showed him guilty of first degree murder or nothing, and that, having been convicted of second degree murder, he should therefore be discharged. In passing upon the doctrine there advanced and here squarely involved, we cannot but regard the amendment of 1929 as the response of the Legislature to the demand of the public that the discharge of criminals on technicalities cease.

In considering the language of the 1929 amendment above quoted, the rule laid down by Judge Cooley in People ex rel. Twitchell v. Blodgett, 13 Mich. 127, is a safe one to follow. He said: "Few persons, if any, would be immediately impressed that the words were ambiguous, and might mean something else. Still fewer would discover in them such an evident purpose to discard the principle of the amendment of 1839, as would be naturally expected to appear if the purpose existed. If I am right in this, then further examination, with a view to find some other and more subtle meaning, ought to be made with extreme caution, lest we deceive ourselves into disregarding the plain and obvious sense for some other, which only ingenuity discovers and suggests."

It is the province of the Legislature to fix the penalties for crime and to prescribe, under the Constitution, the limitations of the jury. Under this legislative mandate, we feel constrained to hold, whatever may heretofore have been the rule in this jurisdiction, that it was not reversible error for the trial court to submit murder in the second degree.

Appellants' second point is based upon the alleged erroneous admission into evidence of a statement made in their presence by Jack Carr, one of their companions, to the witness Grady Huffman, to the effect that: "We are going out to do some highjacking; do you want to join our gang." Carr spoke in a loud voice in a pool hall, while under the influence of liquor. He was one of the five parties named by the deceased when asked by the sheriff if he could give any suggestions or if he had any suspicions as to the identity of the two parties who had tortured him. The evidence complained of was withdrawn from the jury the following day under proper instructions from the court. Ordinarily, error in the admission of evidence is cured by withdrawing such evidence and directing the jury to disregard it. State v. Stewart, 34 N. M. 65, 277 P. 22; State v. Dendy, 34 N. M. 533, 285 P. 486. It is pressed

upon us, however, that this evidence was so prejudicial that its withdrawal after the jury had had it in mind for a whole day at the beginning of the trial did not correct the error or repair the damage. This contention cannot now be considered; appellants having failed to move for a mistrial below. State v. Stewart, 30 N. M. 227, 231 P. 692, 693. See, also, concurring opinion of Mr. Justice Adams in State v. Newsome, supra.

Appellants' next two points are directed to alleged erroneous rulings of the court limiting the cross-examination of the sheriff.

The first ruling complained of was clearly proper, since appellants were attempting to prove a point in their defense not touched upon by the state in the direct examination of the witness. The rule controlling the point is thus stated in State v. Archuleta, 29 N. M. 25, 217 P. 619, 620: "The rule in this jurisdiction is in accordance with the general trend of American authority, which is to the effect that the proper cross-examination of the witness shall be limited to the subject-matter and scope of his direct examination. State v. Rodriguez, 23 N. M. 156, 167 P. 426, L. R. A. 1918A, 1016. See, also, 28 R. C. L. 'Witnesses,' § 194. When an examiner goes beyond the scope of the direct examination, he makes the witness his own. Whether the court will allow the examiner to thus make the witness his own during the progress of the development of the proof by the opposite party is a procedural question, resting, ordinarily, in the discretion of the trial judge, who has under all ordinary circumstances complete control over the order of proof."

See, also, State v. Stewart, 34 N. M. 65, 277 P. 22; State v. Martinez, 34 N. M. 112, 278 P. 210.

By the second ruling complained of it is contended that the court erred in refusing to permit appellants on cross-examination of the sheriff to bring out fully the conversations had by the witness with appellants as to their having been with the Shipman girls from 7:30 until 10:30 or 11 p. m. on the night of the homicide.

After the sheriff had testified on cross-examination that appellants had maintained in all their conversations with him that they were together on the night of the 14th of February, he was further asked:

"Q. Now I believe you said, going back to the conversation you had with the defendants, I believe you asked them—I believe you testified you asked them where they were on Tuesday night, the 14th day of February of this year, did you? A. Yes, sir.

"Q. Did they or not tell you that they arrived at the Shipman home at approximately seven-thirty and remained at the Shipman home until about ten thirty or eleven o'clock?

"Mr. Compton: We object, if the court please, it is apparent it is a self-serving declaration.

"The Court: Objection sustained.

"Mr. Moore: Note an exception."

The sheriff, having on direct examination given parts of these same conversations in evidence, appellants were entitled to have the witness answer the question whether the

parts of the conversation called for were self-serving or not. Territory v. Claypool, 11 N. M. 568, 71 P. 463; State v. Dendy, 34 N. M. 533, 285 P. 486. But the matter was fully developed later, and the sheriff testified to the main points maintained throughout by appellants and their witnesses, the Shipman girls, that they were together during the day and evening of the 14th and not near the ranch where the deceased was tortured. That the appellants maintained this position consistently from their arrest to the end of the trial was never questioned by the state. Their witnesses corroborated them. The veracity of all the witnesses who testified was a question for the jury, and for the sheriff to have given further details of the statements made to him by appellants could have had no effect on their verdict. We therefore hold that the error of the trial court in not permitting the witness to answer the question asked was not prejudicial.

The last point urged upon us for reversal is that the court erred in submitting to the jury instruction No. XXII relating to flight. Appellants were told on Saturday evening that the sheriff had been at their place of abode during the afternoon, looking for them in connection with his investigation of this homicide, and had left word for them to report at the courthouse. They were arrested about 2:30 a. m. the next morning on the highway some 40 miles distant from the courthouse, and said they were going to Logan for gas and oil, preparatory to making a trip to Hot Springs, some 300 miles distant. There was evidence that they had sought advice after receiving word from the sheriff and

were advised to surrender, after Hot Springs had been mentioned as a hideout. This evidence amply justified the court in instructing the jury as to flight, and its action therein was not erroneous.

Believing that the judgment should be affirmed, I dissent.

BICKLEY, Justice (dissenting).

I agree with Mr. Justice HUDSPETH in part as to the effect of the amendment of section 9, chapter 145, of the Session Laws of 1925, quoted by him.

Finding provisions similar to those embodied in the amendment contained in chapter 48, Laws 1929, in statutes of many other states, I do not think the circumstance of whether it was an adoption of the Oklahoma similar statute is greatly important. It reflects the adoption of a policy well known. Nor do I attach importance to the wording of the title to the amendatory act. If this language refers to chapter 145, Laws 1925, it is inaccurate because that chapter did not relate solely to forms of indictment and information, but, as its title and the body of the act shows, it relates to "Procedure in Criminal Cases." If the title to the amendatory act refers to section 9 of chapter 145, Laws 1925, alone, it is too narrow a description, because that section, as it was originally enacted, related to verdicts as well as to indictments and informations. The language of the amendment: "Provided the jury trying the cause may find the defendant or defendants guilty of any offense the commission of which is necessarily included in

that with which he or they are charged," deals with verdicts and not with indictments and informations. It should be noted that the provisions of that section both as originally enacted and as amended declare: "Where the same acts may constitute different *offenses* the accused may be guilty of, the different *offenses* may be set forth in separate counts in the same indictment or information and the accused may be convicted of either *offense*."

It is further provided that: "The *same offense* may be set forth in different forms or degrees under different counts."

In Bandy v. State, cited in the prevailing opinion, the Ohio Supreme Court thought that section 1035, U. S. R. S., U. S. Comp. St. § 1701, 2 Fed. Stat. Anno., 2d Ed., p. 690 (18 USCA § 565), reading: "In all criminal causes the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment * * *" was "substantially similar" to Ohio statute, § 13692, Gen. Code, which reads: "Upon an indictment, the jury may find the defendant not guilty of the offense charged but guilty of an attempt to commit it, if such attempt is an offense at law. When the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged and guilty of an inferior degree thereof," etc.

This view confirms mine that the proviso added in 1929 to section 9, chapter 145, Laws 1925, while specifically giving the jury the power to find the defendant guilty of a necessarily included *offense*, it may be fairly said that the legislative intention was to give the jury power also to find the defendant guilty of inferior necessarily included degrees of the *same offense* charged. If this is not so, then greater strictness would be required in reference to different degrees of the *same offense* than in case of different included *offenses*, and there seems to be no reason therefor.

That there is a difference between included offenses and included degrees of the same offense is recognized in the enactment by our Legislature. Offenses may be distinct and yet included. For instance, voluntary manslaughter is an offense included in homicide, yet it is not a degree of murder. For the purposes of this discussion, I assume with the majority that the view of the Ohio Supreme Court in Bandy v. State, supra, is correct, and that our statute does not mean that a conviction of a lesser included offense or a lesser included degree of the same offense can be sustained if there is an entire absence of evidence upon which to rest the verdict.

The holding of the territorial Supreme Court in Territory v. Salazar, 3 N. M. 321, 5 P. 462, that: "In a prosecution, on an indictment for murder in the first degree, where the instruction given to the jury is as to murder in the second degree, while the evidence was sufficient to convict of murder in the first degree, the instruction, though erroneous, being more favorable to the defendant than the evidence would warrant, he can not complain," suggests an inquiry as to whether the

views thus expressed are in conflict with the holdings in State v. Pruett and State v. Trujillo. The decision in Territory v. Salazar, supra, has never been directly criticized, modified, or overruled. It is to be noted that the territorial Supreme Court in that case found that the evidence in the case did not require the court to submit to the jury the fourth degree of murder. This was apparently because the court thought that evidence of an intentional killing did not establish the offense of an unintentional killing. As to whether evidence produced by the prosecution in a homicide case showing clearly and without dispute that the killing was willful, deliberate, and premeditated, which is an intentional, malicious killing, would sustain a verdict of voluntary manslaughter, which is an unlawful killing of a human being without malice, upon a sudden quarrel or in the heat of passion, or of involuntary manslaughter, which is an unintentional killing occurring in the commission of an unlawful act not amounting to a felony or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection, I do not undertake to say. We are not here dealing with different offenses, even though they may be necessarily included in the offense of homicide. We have but to consider degrees of the same offense, to wit, murder.

Under our statutes, murder is defined as: "The unlawful killing of a human being, with malice aforethought, either express or implied." Comp. St. 1929, § 35-301.

Under the first clause of section 35-304, Comp. St. 1929, one of the kinds of unlawful killings of a human being which is defined as murder in the first degree is: "All murder which shall be perpetrated by means of poison or lying in wait, torture, or by any kind of wilful, deliberate and premeditated killing."

In the case at bar, the appellants claim that the evidence is not sufficient to show their connection with the crime. In this respect, they argue that the evidence does not support the verdict. They do not claim that the evidence is not sufficient to have sustained a verdict of murder in the first degree if the jury had rendered such a verdict. To the contrary, they claim that the evidence proved murder in the first degree or it proved nothing.

In endeavoring to discover the principles which should control our decision in a case like the one at bar, great care should be exercised lest we become confused as to the proof required to sustain a verdict of murder in the first or second degree as those degrees are defined in our statute. Appellants assert that, where the killing is by torture "or the homicide is committed in the perpetration of a felony, neither deliberation nor premeditation or intention to kill are necessary elements of first degree murder." They cite State v. Welch, 37 N. M. 549, 25 P.(2d) 211. The cases are not parallel. The majority do not admit them to be so. I assume that in a murder case, where the charge is that the defendant unlawfully killed the deceased "in the perpetration of or attempt to perpetrate a felony," it is not necessary for the prosecution to either allege or prove that the killing was either willful, deliberate, or

premeditated. If the proof would warrant the jury in concluding that the defendant had killed the deceased "in the perpetration of or attempt to perpetrate a felony," the state need go no further. Under the first clause of the statute, it is necessary for the prosecution to prove that the defendant intended to kill the deceased; second, that the killing was with malice aforethought; third, that the malice was of the character known as express or intensified malice (deliberation). It seems to be conceded in conference that, if the killing were by means other than "poison, or lying in wait, torture," if the prosecution has proved by clear, convincing, and undisputed evidence the presence of these elements or ingredients of murder in the first degree, and there is no evidence on the part of the state from which any inferences could be drawn which would warrant the submission of the issue of murder in the second degree, and the defendant has brought forth no evidence to controvert or impair the testimony of the state, the trial judge would not be *required* to submit the issue of murder in the second degree. (Whether the amendment to section 9, chapter 145, Laws 1925, heretofore referred to, has changed this situation as far as the duties of the trial judge are concerned, I express no opinion.) Yet, if the trial judge made a mistake and submitted a charge of murder in the second degree, and the jury should find the defendant guilty of murder in the second degree, the verdict could not be set aside because it was more favorable to the defendant than he was entitled to. It seems to be admitted that under such circumstances the evidence thus satisfying the re-quirement of murder in the first degree will sustain a conviction of murder in the second degree because the verdict of not guilty in the first degree has served only to eliminate deliberation which elevates murder in the second degree to murder in the first. But the majority inquire: "Where the law descends to particulars and prescribes that a murder perpetrated by means of torture is murder in the first degree, and the jury finds that the homicide was thus effected, how can it be said that murder in the second degree is included?" As well ask, How can a willful, deliberate, premeditated murder be second degree murder? Let the thought be carried a little further by asking: How can a guilty man be innocent; and how can a verdict of not guilty be rendered in either supposed case?

I am not referring to classes of cases where the evidence is conflicting. I am referring to murder cases (absent perpetration by means of poison, lying in wait, torture) where, in the view of the trial judge, the evidence is clear or convincing and undisputed that a willful, deliberate, and premeditated killing has occurred and the defendant is the killer—a case so strong on behalf of the state that the court would not be required to submit the issue of murder in the second degree. The element of deliberation has been establishd by clear and overwhelming evidence of threats by the defendant, ill will and hostility (the ordinary characteristics of evidence adduced to establish deliberation), and, if the court makes a mistake, and submits second degree, and the jury find the defendant guilty of second degree, murder,

the verdict may not be set aside because the error of the trial court is not prejudicial to the defendant and the verdict is sustained by the evidence because the evidence which is sufficient to prove all of the elements of murder in the first degree is sufficient to prove all but deliberation.

Believing, as I do, that this case is distinguishable from State v. Welch, I am in agreement with much that was said by the Supreme Court of Nevada in State v. Lindsey, 19 Nev. 47, 5 P. 822, 823, 3 Am. St. Rep. 776, where statutes like ours were under consideration, that, where the means employed to effect the killing are poison, lying in wait, or torture, the case stands precisely the same as in any case not enumerated in the statute where there is a willful, deliberate, and premeditated killing. The means employed to kill if within the enumeration of the statute carry with them conclusive evidence of the elements which raise murder from the second degree to first degree. I think that is all that can be claimed for the enumerated means. In Aguilar v. Territory, 8 N. M. 497, 46 P. 342, 344, the court says that: "If the murder is perpetrated by means of poison, lying in wait, torture * * * the law *presumes* that the acts by which the murder has been thus committed have been done with that premeditation and deliberation which constitute the crime murder in the first degree."

Is it any more shocking to the intelligence and consciences of the reviewing judges that the jury shall flagrantly "stultify itself by returning a verdict contrary to what it knows to be the law" when the issue of the existence of the elements of deliberation has been answered in the affirmative by a presumption erected by the statute which dispenses with the proof of the facts than it is for them to flagrantly disregard other conclusive proof established by undisputed and overwhelming evidence of the character appropriate to establish deliberation?

While mentioning these judicial criticisms of the frailties of juries, I think it well to say a word in extenuation. The Nevada court, in State v. Lindsey, said:

"A judge should always inform the jury of the degree which the law attaches to murder, by whatever means the crime may have been committed; but in every case it is the province of the jury, if the prisoner is found guilty, to determine and fix the degree by their verdict, and the courts cannot deprive the jury of their right to fix the degree by imperatively instructing them, in a case where the crime was committed by administering poison (or in any other case), that if they find the prisoner guilty they must find him guilty of murder in the first degree. Robbins v. State, 8 Ohio St. 193; Beaudien v. State, 8 Ohio St. 638; Rhodes v. Commonwealth, 48 Pa. 398; Lane v. Commonwealth, 59 Pa. 375; Shaffner v. Commonwealth, 72 Pa. 61 [13 Am. Rep. 649].

"Wharton, in discussing the degrees of murder, says: 'But, however clear may be the distinction between the two degrees, juries not infrequently make use of murder in the second degree as a compromise, when they think murder has been committed, but are

unwilling, in consequence of circumstances of mitigation, to expose the defendant to its full penalties.' 2 Whart. Crim. Law, § 1112.

"In Rhodes v. Commonwealth [48 Pa. 398], supra, the court said: 'Under proper instructions from the bench, it is not only the right of the jury to ascertain the degree, but it is the right of the accused to have it ascertained by them. * * * No doubt cases of murder in the first degree have been found in the second, but this must have been anticipated when the statute was framed, and has certainly been observed under its operation, and yet it has remained upon our statute-book since 1794 unaltered in this regard. Possibly the very distinction of degrees was invented to relieve such jurymen's consciences as should be found more tender on the subject of capital punishment than on their proper duties under evidence. Many men have probably been convicted of murder in the second degree, who, really guilty of the higher crime, would have escaped punishment altogether but for this distinction in degrees so carefuly committed by the statute to juries.'

"The jury have the undoubted power to fix the crime in the second degree when it ought, under the law and the facts, to be fixed in the first. 'We need not speculate about why it was so provided. It is sufficient that it is so written, and we cannot change, alter, or depart from it.' Lane v. Commonwealth, supra."

If the suggestion is valid, and I think it is, that the distinction into degrees was invented for the purpose suggested by the Pennsylvania court, and also the Legislature has placed it in the power of the jury to state in their verdict the degree of which the defendant is guilty, they ought not to be much blamed if their verdicts are not *technically correct.*

That the rule is not different in the cases where the means of committing a deliberate and premeditated murder by means of poison or torture is referred to in the annotation in 21 A. L. R. 603, as follows:

"Under a statute requiring that if the jury find the defendant guilty of murder they shall ascertain in their verdict whether it is murder in the first or second degree, it has been held that a jury may find a defendant guilty of murder in the second degree, although the evidence shows a homicide by poisoning, and such an offense is by statute made murder in the first degree. State v. Dowd (1849) 19 Conn. 388. In that case the court said: 'In most of the cases mentioned in the statute as constituting the crime of murder in the first degree, the lesser crime is manifestly included. Thus, if the charge were that the murder was committed by the accused while lying in wait, the jury might find that it was not so committed, and convict him only of the lesser offense. So, if it were averred that the act was done by him while attempting to commit the crime of arson or rape, the jury might find that part of the charge untrue, and still convict the prisoner of murder in the second degree. Now, if the same rule applies to a case where the charge is for murder by poisoning, then the conviction in this case was legal. The language of the statute

strongly favors such a construction. It provides that murder perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, shall be murder in the first degree; thereby implying that in all cases the crime must be the result of a wilful, deliberate, and premeditated act. Hence, if any case can be supposed where murder may be committed by means of poison, and not be the result of such an act, then a conviction of murder in the second degree may be legal. And we do not feel ourselves authorized to say that the case under consideration might not have been one of that description; and, consequently, that the verdict is not right. Indeed, we are rather inclined to consider such the fair construction of the statute, especially as it is a highly penal one, and such construction operates against the greater severity.' See to the same effect, State v. Greer (1895) 11 Wash. 244, 39 P. 874. The latter case was cited with approval in State v. Howard (1903) 33 Wash. 250, 74 P. 382, wherein the homicide appeared to have been perpetrated in committing a rape, but the evidence that it was so committed was not conclusive.

"Likewise, under a statute providing that whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty, it has been held that a jury may find the defendant guilty of manslaughter on evidence which is clearly sufficient to prove murder in the first degree by poison, under the statute relating to murder by poison. State v. Phinney (1907) 13 Idaho, 307,

12 L. R. A. (N. S.) 935, 89 P. 634, 12 Ann. Cas. 1079."

A leading case which is very persuasive is State v. Yargus, 112 Kan. 450, 211 P. 121, 27 A. L. R. 1093. This is so particularly on account of a similarity of definition of murder in the first degree and murder in the second degree therein contained to that afforded in State v. Smith, 26 N. M. 482, 194 P. 869, 870. In the Yargus Case, wherein the defendant, charged with committing murder in the first degree by means of poison, was convicted of murder in the second degree, the statute on which the charge was based provided that every murder committed by means of poison "shall be deemed murder in the first degree," and that a murder "committed purposely and maliciously, but without deliberation and premeditation," shall be deemed murder in the second degree. The court reviews at some length the propriety, under such circumstances, of the submission to the jury of second degree or a conviction therefor. Assuming that the evidence did not show an absence of deliberation and premeditation by committing murder by poison, the court declares that, nevertheless, the error of submission to the jury of second degree murder was not prejudicial to the defendant.

The greater offense, it is said, includes the less—*has all elements thereof, together with deliberation and premeditation;* and if, as claimed by the appellant, the use of poison to commit murder involves deliberation and premeditation, she was benefited, and not injured by the instruction in question.

In the Yargus Case the court said: "The greater offense included the less; it had, in any view, all the elements of the less, and possibly two which it lacked—deliberation and premeditation."

In State v. Smith, supra, we held that, in a case where the prosecution attempts to prove murder in the first degree perpetrated by lying in wait, and the defendant pleads self-defense, the court properly instructed the jury on murder in the second degree. The theory of the opinion is similar to that of the Supreme Court of Kansas in the Yargus Case, that is, that murder in the second degree is included in murder of first degree *with deliberation added,* to constitute murder in the first degree. We there said: "It is conceded by the state and by the appellant that the act of lying in wait supplies the element which raises the crime to the grade of murder in the first degree, and that, if such fact—that is, lying in wait—is proven, *together with the elements that constitute murder in the second degree,* it is not necessary for the state to go further and prove deliberation."

It is further said: "In all cases of murder then we have premeditated malice"; that is to say, there are some elements that are common to both degrees. Again it is said: "We have then in this case a murder committed without that deliberate intention to take away the life of a fellow creature, or, as it is sometimes stated, without deliberation. It was a killing with malice, but without deliberation, and without the lying in wait. If the lying in wait is eliminated, *as it must*

be *in this case, for the verdict was not murder in the first degree, there remains* an unlawful or felonious killing unexplained to the satisfaction of the jury by the defendant's evidence of self-defense. From this unlawful killing without justification or excuse, for the jury disregarded the evidence of self-defense, the jury found the defendant guilty of murder in the second degree, which is murder with malice, but without deliberate intention or without deliberation, or without lying in wait, *but with all the other elements of murder present,* namely, a killing that was willful or intentional, premeditated or thought of before (aforethought), felonious or unlawful—that is, without justification or excuse."

And again:

"The jury were entitled to draw this inference, that is, that the defendant was guilty of second degree murder, from the evidence and the killing and the failure of the defendant to satisfy them as to his plea of self-defense. The fact that the state failed to prove murder by lying in wait or murder in the first degree to their satisfaction beyond a reasonable doubt, and the defendant did not prove justification by self-defense, left to the jury the right to say, *under the evidence or absence of evidence of deliberation,* that the homicide thus committed was murder in the second degree, or, as heretofore stated, murder with malice, but without deliberation. This malice the jury could infer from the evidence or absence of evidence, or it would have been implied in this case as a matter of law if the jury, as an inference of fact, found

the essential conditions under the statute for the implication; that is, that no considerable provocation appeared, or that all the circumstances of the killing show a wicked and malignant heart. *We are unable to point to any specific evidence, or say that particular evidence is evidence of murder in the second degree,* by the inferences drawn from facts and circumstances or the absence of facts and circumstances tending to prove deliberation justified the jury in taking the view that the homicide was one with malice, as above defined, and without deliberation, *but with all the other elements of murder present.*"

In the definition of murder, we find the courts and law-writers constantly referring to its "elements" and to the elements of the two degrees thereof.

Experience in the administration of the law of crimes has caused the erection of certain presumptions which are sometimes referred to as "presumptive evidence."

One of the most famous of these is the presumption in favor of innocence. "The law presumes the innocence of a person charged with crime until the contrary is proved beyond a reasonable doubt." Lawson in his work on "Law of Presumptive Evidence" agrees with Mr. Rufus Choate that this presumption "is in the nature of evidence for the defendant," and that "it is equal to one witness"—in theory at least. At page 640, Prof. Lawson, discussing the nature of a presumption, says: "Presumption is allowed to prove facts, even in criminal cases; and one of the highest modes of proof is to show the existence of circumstances which could not have existed if the fact proved had not existed. And what is this kind of proof but presumption. A single circumstance may have little strength, and of itself afford no foundation; but when joined to many more of the same nature, all fitting each other and having the same relation, the whole united may form an arch strong enough to support a presumption of the most important fact."

An intentional killing with a deadly weapon or means stripped of all its incidents and surrounding circumstances is presumed to be murder in the second degree. The burden is on the prosecution to raise it to the first degree, and on defendant to reduce the grade of the crime. 30 C. J. Homicide, § 358.

In Aguilar v. Territory, supra, this well-known presumption seems to be recognized: "While the death and the weapons or means used to produce death, may, in and of themselves, be sufficient to show murder, yet alone they raise no presumption as to the degree of the murder. If any presumption as to the degree is to be raised from these facts, it is the second degree; and, if the territory would lift the crime from this to the higher degree, it can do so only by the proof of such additional facts and circumstances in relation to the crime as will permit the court to charge, and the jury to determine, that it was done with that deliberation and premeditation which will make it murder in the first degree."

Lying in wait is not of itself a means of taking life, but merely evidence to prove the elements of deliberation and premeditation.

Wharton on Homicide, § 110. Homicide by poison is not necessarily murder at common law, and, if it is not, it is not murder in the first degree under the statute. Wharton on Homicide, § 109. The placing of deadly poison with fatal consequences in a cistern of drinking water, done with a wicked and malignant heart, might be an act "greatly dangerous to the lives of others, indicating a depraved mind regardless of human life," so as to be murder in the first degree. But it is doubtful whether evidence of such act would be sufficient where the charge is a felonious intent to murder a particular person; it having been decided that this statutory provision does not apply to cases of death produced by acts affecting a single individual, or where there is an intent to kill any particular individual. 29 C. J. Homicide, § 84. If poison were administered fatally to a particular individual, the person administering it might be innocent of any offense or guilty of murder or manslaughter, according to the circumstances of the case.

In the Territory v. Vialpando Case, 8 N. M. 211, 42 P. 64, our territorial Supreme Court said that torment judicially inflicted was not the torture meant by our murder statute, and I venture to add that pain, anguish, pang, and suffering inflicted by a surgeon in the performance of an operation, and the patient dying as a result thereof, are not what is meant by our statute.

My argument is that evidence which would *warrant* the jury in finding a verdict of first degree murder because the elements of second degree are proved, and element of deliberation is proved by virtue of the presumptive evidence afforded by the statute where the means employed to effect death is poison or torture, would not eliminate proof by the same evidence of the elements of murder in the second degree any more than the proof of the existence of such elements of second degree would be eliminated where the proof of deliberation and premeditation is established by uncontroverted evidence of hostility, threats, ill will, and other circumstances appropriate to establish such deliberation and premeditation. In either case the included evidence which establishes the existence of second degree murder is there, and the finding by the jury even in flagrant disregard of the evidence, presumptive or otherwise, and contrary to their obligations and in the teeth of the law that the elements of deliberation and premeditation (express malice) did not exist, does not eliminate proof of implied malice and the proved elements of murder in the second degree.

Do not the means employed by the defendants to kill the deceased show wicked and malignant hearts which is sufficient to constitute implied malice which is sufficient to satisfy the required element of implied malice to establish second degree murder? Express malice necessarily renders any murder one in the first degree. Because a jury has said that proof of certain facts which would warrant an inference that both implied malice and express malice have been established have said by their verdict that express malice has not been established, is there any reason for us to say that the proof does not establish implied malice? As I understand them,

the majority would answer in the negative, except where the express malice has been established by presumptive evidence afforded by the statute where the means employed to effect death are those particularly enumerated as illustrations of kinds of willful, deliberate, and premeditated killings.

In Bandy v. State, 102 Ohio St. 384, 131 N. E. 499, 504, 21 A. L. R. 594, the court said: "So far as generalizations are possible in case of murder in the first degree, it may fairly be said that in murder in the first degree, where there is charged an unlawful killing, intentionally done, with deliberate and premeditated malice, the general rule would be that the lesser degrees would not only be included in the formal charge, but suggested or supported by some of the evidence in the case, and that therefore a refusal to charge upon the lesser degrees should be the exception. Whereas, in cases of murder in the first degree, where an intentional killing was charged in the commission of some felony enumerated in the statute, there would doubtless be a more equal division as to whether or not the evidence showed any lesser degree than the one literally charged. Probably in this class of cases it might be said that the lesser degrees would be the exception."

They had a case before them of the latter kind.

The difference is, I think, that in cases of that sort, like State v. Welch, the elements of malice, intention to kill, deliberation, and premeditation are not elements of the offense to be proved. There "homicide" committed in the perpetration of a felony is murder in the first degree, though not willful, deliberate, or premeditated. Under the first sentence of our statute defining murder in the first degree, murder is the willful, deliberate, and premeditated killing of a human being such as by means of poison, lying in wait, torture. The enumeration of these means shows the kind of deliberation and premeditation contemplated. These elements are not absent as they are in "homicide" committed in the perpetration of a felony.

In an article in volume 94, Central Law Journal, 114, written by Hon. James E. Garrigues, formerly justice of the Supreme Court of Colorado, under the title "Murder and Malice—Express and Implied," is impressed the idea I am trying to delineate. After showing that murder in the first degree is based on express malice and murder in second degree on implied malice, he says:

"Every conviction of first degree murder, based on express malice, includes implied malice, but proof of implied malice does not include proof of express malice. But the proof might, and often does, show both implied and express malice, and murder in the first degree, and still the jury return a verdict of second degree murder, based on implied malice, or manslaughter, which would not be reversible error, because the defendant could not take advantage of a verdict in his favor. * * *

"The phrase, 'deliberate intention unlawfully to take away the life of a fellow creature,' used in the definition of express malice, is synonymous with 'deliberation and premed-

itation.' Premeditation and deliberation are elements in the proof of express malice. Proof of a deliberate intention, executed, unlawfully to take away the life of a fellow creature, proves express malice. Such deliberate intention is synonymous with premeditation. There is no difference in meaning between the definition of express malice and the deliberation and premeditation necessary to constitute murder of the first degree. No material distinction exists between deliberate and deliberation—both are synonymous with a premeditated killing.

"It is evident that the statutory definition of express malice is synonymous with deliberation and premeditation. If one forms such deliberate, specific intention, unlawfully to kill, and carries it into execution, he is guilty of murder of the first degree, and such intention may be implied by the jury from the facts and external circumstances proven on the trial, and when so implied, is proof as a fact, of express malice.

"At common law there were no degrees of murder, and no distinction in value between implied and express malice. As a punitive measure, our statute divides murder into degrees without affecting the definition of murder, which is the unlawful and malicious killing of a human being. At common law, the distinction between express and implied malice had no practical value, and little attention was paid to it, because it made no difference whether malice was implied or expressed, it was murder in either event. The punishment was the same, and there were no degrees, and no distinction in the punishment. This ac-

counts for the general use of the term malice in the books, and the lack of any distinction as to whether they refer to express or implied malice, because it made no difference. Often, it is difficult to know whether opinions and textbooks refer to express or implied malice, for the reason the distinction is without a difference. Both are of the same value, and no attention is paid to the distinction. In fact, there was no distinction. But, under a statute where a conviction of murder of the first degree, based upon premeditation and deliberation, may carry with it a death sentence depending upon express malice, and is impossible of proof without proof of malice in fact, the distinction between implied and express malice becomes of the utmost importance. *Every case of first degree murder, of course, necessarily includes implied malice; but implied malice, standing alone, will not sustain first degree murder.* A case resting alone upon proof of implied malice is lacking in proof of a specific intention to take life. At common law, as we have said, no importance was attached to this distinction, because there was no difference in value between implied and express malice, and the distinction amounted to nothing; but this is not true under the statute.

"Because the evidence makes out a case of implied malice, does not inhibit the jury from also finding express malice. *Malice, both implied and expressed, might be shown by the same proof; the killing might be unlawful, and no considerable provocation appear; or the circumstances of the killing might show an abandoned and malignant heart, which*

would constitute proof of implied malice; and the same evidence might also show a deliberate intention unlawfully to take human life, which intention might be inferred by the jury, constituting proof in fact of express malice. *So upon the same proof,* malice might be both express and implied malice, in which event the jury should return a verdict of murder of the first degree. But upon proof of implied malice only, without proof of express malice, it would be murder of the second degree. *In fact it would be hard to conceive of a case of first degree murder that did not include second degree murder and voluntary manslaughter.* To illustrate: Any unlawful killing of a human being without legal provocation may show conditions under which the statute says malice shall be implied. If, in addition to proof of implied malice, the evidence on the trial shows such deliberate intention to kill, this would be proof, as a fact, of express malice. Indeed, any specific, deliberate intention, unlawfully to take away the life of a fellow creature without legal provocation, carried into execution, constitutes a killing without considerable provocation appearing, and shows an abandoned and malignant heart, and is proof of both implied and express malice, *and is murder in both degrees. The evidence which might warrant the jury in returning a verdict of murder of the first degree would include proof of implied malice, and murder in the second degree. The degree of guilt being left to the jury, it follows they might, and we know they do, in cases where the evidence showed murder of the first degree, return a verdict of murder of the second degree, just as they* often return a verdict of not guilty when the evidence showed, beyond any reasonable doubt, defendant guilty of murder." (Italics supplied.)

In an able article by Hon. Rollin M. Perkins, professor of law, State University of Iowa, and legal advisor of the American Law Institute on criminal procedure and on administration of the criminal law, entitled, "A Re-examination of Malice Aforethought," it is said: "It would be an unreasonable burden upon the prosecution to require it in every murder case to prove not only the killing of the deceased by the defendant, but also the non-existence of every conceivable set of circumstances which might be sufficient to constitute either innocent homicide or guilt of manslaughter only. Thus the state is not required, in order to make out a prima facie case of murder, to prove (in addition to the killing of the deceased, by the defendant) that the defendant was not so insane as to be wanting in criminal capacity, or that the killing was not an accident, or that it did not result from the privileged use of deadly force, or that it did not result from the sudden heat of passion engendered by great provocation, or other matters of this kind. To require such proof, moreover, would constitute an absurd waste of time. This difficulty is avoided by a rule of law in the form of a presumption. It has sometimes been said that every homicide is presumed to be with malice aforethought and that it devolves upon the prisoner to prove circumstances which will justify, excuse or mitigate the act. This, however, is quite generally recognized to be an overstatement of the position. If the evidence intro-

duced by the state, while showing the killing of the deceased by the defendant, should at the same time establish some basis of justification or excuse, the defendant would be entitled to a directed verdict of acquittal without the introduction of evidence on his part. Hence it is necessary to put the matter in this form: Every homicide is presumed to have been committed with malice aforethought 'unless the evidence which proves the killing itself shows it to have been done without malice.' Since this is a presumption in the true sense it merely places upon the defendant the burden of going forward with the evidence. It is rebuttable and may be overcome by evidence which throws a different light upon the situation or which establishes exculpating or mitigating circumstances. If no such evidence is offered, a conviction of murder is proper because of the 'presumed malice.'"

Suppose the accused were charged merely with second degree murder, would the fact that the prosecution proved an unlawful killing and the evidence showed both implied and express malice, entitle him to an acquittal?

In the case at bar, the jury found an unlawful intentional killing of the deceased upon proof sufficient to show both implied and express malice and sufficient to prove *murder in both degrees.*

The indictment was in the common-law form. It was not alleged that the means employed to effect death constituted torture. Assuming this to have been unnecessary, it also appears that the jury were not instructed that, if they believed the killing to have been accomplished by the means alleged, presumptive evidence would be afforded of deliberation and premeditation (express malice). The failure to so instruct placed a heavier burden upon the prosecution than necessary, since the jury were left to the task of finding existence of deliberation and premeditation from such evidence of these facts as is ordinarily adduced to establish them. If it was error to fail to instruct as to significance of torture as an evidentiary matter, it was favorable to defendants. If heed is to be given to appellants' argument that the acts the jury said they committed in themselves proved deliberation and premeditation, they ought not to have taken advantage of the situation which placed additional burdens on the prosecution.

It is hardly fair to the state to entertain the proposition of appellants that the evidence shows murder in the first degree because the proof of the means of killing is statutory presumptive evidence sufficient to prove those facts essential to first degree murder when the jury were not advised that they could so consider.

While it is not necessary to speculate as to why the jury failed to find the existence of express malice (deliberation and premeditation), I think a word as to the evidence of intoxication of the defendants is not out of place. Wharton on Homicide, at page 10, says: "Murder in the second degree rests upon implied malice and the jury may find the existence of implied malice which will subject the accused to a charge of murder in that degree, though his intoxication was such as disproved express malice."

Since the state had the burden of proving deliberation and premeditation in order to elevate the murder to first degree, some doubt would be cast upon the probative effect of the state's evidence by evidence introduced by the state itself, showing intoxication of defendants.

The question of whether intoxication of accused may be invoked by him in a case where the killing is by poison, lying in wait, or torture, for the purpose of rebutting deliberation and premeditation, does not arise, because, so far as the jury was informed, this was not a case coming within the statutory enumeration of examples of willful, deliberate, and premeditated killing. And, too, the evidence of intoxication was not adduced by defendants, but was put in by the prosecution. So I think intoxication as affecting capacity to deliberate, being one of the facts of life which the jury are credited with knowing, may properly have been considered by them in weighing the presumptive evidence of deliberation. If, as said in State v. Diaz, 36 N. M. 284, 13 P.(2d) 883, 887, "The common knowledge of the intelligent jury may serve fairly as to presumption of innocence, self-defense, or circumstantial evidence," I do not see why it may not serve also as to the effects of intoxication on the ability to "deliberate."

These considerations, to my mind, absolve this jury from the imputation of flagrant disregard of duty, etc.

It in a measure also explains the court's action in submitting an instruction in second degree. When the evidence of intoxication offered by the prosecution without objection from defendants came in, the court doubtless thought it had a bearing on the issues, and may have intended to instruct upon its consideration by the jury, but have overlooked doing so. If it is a correct speculation that the jury may have had their consideration affected by it beneficially to appellants, it was just as good for them as if the jury had been guided by proper instructions. See State v. Brigance, 31 N. M. 436, 246 P. 897.

I understand the law to be that, if there is any evidence which may reasonably create a doubt, however slight, in the mind of the jury as to whether the killing were willful, deliberate, and premeditated, it is the duty of the court to instruct as to the law of both degrees.

In State v. Le Duc, 89 Mont. 545, 300 P. 919-927, the court expressed a doubt in a case where the evidence warranted a verdict of first degree murder whether a verdict of guilt in second degree could be sustained by the presumption that an unlawful killing of a human being with a deadly weapon or means is murder in the second degree or whether some substantive evidence would not be required to support it. Here we have held that a finding of fact by the court sustained by "presumptive evidence" would not be disturbed on appeal. Weeks v. Bailey, 33 N. M. 193, 263 P. 29. I do not know why the rule should be otherwise in a criminal case, especially where the presumption is one which the law has evolved out of motives of charitable consideration—for the frailties of men, and the benefit of the accused. And more particularly in a case where the appellants rely for re-

versal upon presumptive evidence to establish that the jury should have found them guilty of first degree murder or not guilty. But, as I have endeavored to show, this presumptive evidence, though substantial, is a lesser reliance.

The idea that one accused of murder has a right in a case where the evidence *warrants* a conviction of murder in the first degree to gamble on the verdict and obtain a submission of first degree or nothing was exploded in State v. Diaz, 36 N. M. 284, 13 P.(2d) 883. Public policy as reflected in the amendment to section 9, chapter 145, Laws 1925, does not permit him to go free because a merciful jury are unwilling by their verdict to visit the extreme penalty on him, and so find him guilty of a lower degree of the same offense.

I think the error, if any, in the submission of the issue of second degree murder, is not one of which the appellants may properly complain.